**George Thomas FRANKLIN,**
**Petitioner–Appellee,**

v.

**William DUNCAN, Warden,**
**Respondent–Appellant.**

No. 95–15820.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 19, 1995.

Decided Nov. 20, 1995.

Bruce Ortega, Deputy Attorney General, San Francisco, California, for respondent-appellant.

Dennis P. Riordan, Riordan and Rosenthal, San Francisco, California, for petitioner-appellee.

Before FERGUSON and HAWKINS, Circuit Judges, and NIELSEN, District Judge.*

* The Honorable Wm. Fremming Nielsen, District Judge for the Eastern District of Washington, sitting by designation.

**PER CURIAM:**

We affirm the district court's grant of Franklin's petition for writ of habeas corpus. We agree with the analysis and conclusions reached by the district court and hereby adopt the district court opinion which is reported *Franklin v. Duncan,* 884 F.Supp. 1435 (N.D.Cal.1995). We supplement the opinion of the district court by including verbatim the prejudicial closing argument of the state prosecutor and the verbatim jury instruction, both of which constituted prejudicial error in violation of Franklin's Fifth Amendment right to remain silent. The prosecutor stated:

[I]n 1989, when he's arrested by Sergeant Morse and Detective Cassandro, something very interesting happens. They tell [Franklin] that they're investigating the Susan Nason homicide and that they want to ask him some questions about it.

And what is his response? Quote: "Have you talked to my daughter?"

Smart man. He wants to know what they know before they start asking him any questions.

And when Eileen goes to visit him in the jail in January of this year, what happens?

Well, imagine—just, if you can for a moment, think about it. Assume for the moment that Mr. Franklin is not guilty. He has not committed this murder; he knows it. He didn't do this. And he learns that his daughter, who is accusing him of this murder, who has caused him to be arrested, is there to see him at the jail.

What is he going to say to her? What would any innocent person in a similar situation do?

Eileen, why are you doing this? You know it's not true. Whatever it is, we'll talk about it. Don't do this to me. You know it's wrong. You're lying. Are you sick? Are you angry? What is going on? Why are you falsely accusing me?

Does he say any one of those things?

No.

It's Eileen who says to the defendant: Dad, a lot of what I am is because of you. And you did some good things for me: You told me to always tell the truth—and that's what I'm doing—and you always said that the truth would set you free. Doesn't that apply to both of us?

Those were Eileen's words to her father.

And what was his response?

Ladies and gentlemen, Mr. Franklin's response was to point to a sign that says: "Notice. This station may be monitored."

Now, what does that tell you?

That tells you law enforcement might be monitoring their conversation.

So what would be the most sensible thing to do?

Deny it: Eileen, what do you mean, tell you the truth? What do you mean, tell the truth? Why don't you tell the truth. You know I didn't do this. How can you accuse me of this? How can you falsely accuse me of this?

No. He believes the conversation is being monitored, and he does not deny a false accusation of murder?

Well, why bother? Why bother to deny it when the only two people there are the two people that know?

He knows—(pointing)—he knows that she knows because they were together.

So he doesn't have the chutzpah to deny it.

But if he were innocent, ladies and gentlemen, wouldn't he be telling her that loudly and clearly? Wouldn't he be begging her, demanding her, challenging her, chastising her to stop this craziness?

And if in fact she was falsely accusing him, then doesn't his next statement make not much sense at all; whereas, if in fact she is accusing him of a crime that he did commit, it makes a lot of sense.

She says to him at some later point in the conversation, "Is there anything I can do for you?" And his response is, "There is something that only you can do for me."

And what is that?

Call up the police and say she made it up; it wasn't true; he's innocent after all.

And then, of course, his parting remarks to the daughter who is falsely accusing him of murder, who is responsible for him being where he is, who is completely devastating his life—him, the innocent victim—what does he say to her? "Will you come back and see me again?"

Ladies and gentlemen, that exchange alone is worth its weight in gold when you put it into the equation of proof beyond a reasonable doubt.

The court has instructed you that the law recognizes what is called an adoptive admission.

An admission is where you actually say something that implicates you in a crime. A confession, obviously, you confess to a crime.

An admission might be a statement: Yeah, I had the gun during that robbery, but I didn't mean to fire it.

But an adoptive admission is where there is an occasion when a defendant, under conditions reasonably—which reasonably afforded him an opportunity to reply, failed to make a denial or made a false, evasive, or contradictory statement in the face of an accusation expressed directly to him in his presence, charging him with the crime for which he is now on trial and intended to connect him to its commission.

And when the defendant heard that accusation and understood it, the circumstances of his silence on that occasion may be considered against him as indicating an admission that the accusation thus made was true.

These prejudicial comments by the prosecutor were coupled with the following jury instruction:

If you should find from the evidence that there was an occasion when the defendant, under conditions which reasonably afforded him an opportunity to reply, failed to make a denial, or made false, evasive or contradictory statements in the face of an accusation expressed directly to him or in his presence charging him with the crime for which the defendant is now on trial, or tending to connect him with its commis-

sion, and that he heard the accusation and understood its nature, then the circumstance of his silence on that occasion may be considered against him as indicating an admission that the accusation thus made was true.

Evidence of such an accusatory statement is not received for the purpose of proving its truth, but only as it supplies meaning to the silence of the accused in the face of it.

Unless you find that the defendant's silence at the time indicated an admission of the accusatory statement was true, then you must entirely disregard that statement.

■ The prosecutor's comments regarding Franklin's post-*Miranda* silence and the jury instruction regarding adoptive admissions in the context of the facts of this case had a substantial and injurious effect or influence on the jury's verdict. *Brecht v. Abrahamson,* 507 U.S. 619, ——, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993). Therefore, Franklin's petition for habeas corpus should be granted.

### CONCLUSION

The judgement of the district court is AFFIRMED.