**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0827n.06
Filed: December 6, 2007

**No. 05-6795**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| VIRGIL TAB, JR., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

BEFORE: MOORE and GRIFFIN, Circuit Judges; and GRAHAM, District Judge.[*]

GRIFFIN, Circuit Judge.

Defendant Virgil Tab, Jr. appeals his convictions and sentence for being a felon in possession of a firearm, a fugitive from justice in possession of a firearm, and an unlawful user addicted to a controlled substance in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1)-(3). Tab argues that the evidence offered against him at trial was insufficient to support his convictions; the district court erred in denying his motion to suppress evidence; he was denied his Sixth Amendment right to a fair and impartial jury; the district court abused its discretion in admitting into evidence certain pieces of testimony; the prosecutor impermissibly commented on his failure to testify at trial; his sentence is unreasonable; and he received ineffective assistance of counsel at trial.

_____

[*]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

Because we conclude that each of Tab's arguments lacks merit, we affirm his convictions and sentence of 120 months of incarceration.

I.

On January 26, 2004, an informant disclosed to the Shelby County (TN) Sheriff's Office Narcotics Division that heroin was being stored at the residence of Erica McClain at 2740 Hickory Villas Drive #2 in Memphis, Tennessee, and weapons were present in the apartment. The Sheriff's Office then obtained a search warrant for the apartment, naming three individuals, including Tab. Because the narcotics officer who obtained the warrant suspected that there might be armed individuals inside the apartment, a SWAT team was enlisted to assist in the execution of the warrant.

At approximately 2:00 p.m., the officers knocked and announced their presence at the door of the apartment. When they received no response eight to twelve seconds after knocking, the SWAT team made a forced entry through the front door. Immediately after entering, Officer Gary Rogers secured Sean Jackson, who was in the living room, located at the front of the apartment. While the other officers headed towards the bathroom and bedroom located in the back of the apartment, Rogers asked Jackson whether anyone else was in the apartment. Jackson replied that "[a] guy and a girl" were in the bedroom.

Before the SWAT officers entered the apartment, Tab and his girlfriend, Erica McClain, were lying on the bed in the back bedroom. When McClain heard the SWAT team enter the apartment, she jumped out of the bed and hid underneath. Before hiding underneath the bed, she saw Tab get

off the bed and head in the opposite direction, toward the side of the room containing the room's double-door closet.

When the officers first entered the bedroom, neither McClain nor Tab was immediately visible. Officer Chris Harris proceeded to the closet to determine whether anyone was hiding inside. As Harris approached the closet, one door appeared shut and one was partially open. After walking towards the open closet door, Harris noticed movement inside the closet. As he later described at trial, "it looked like . . . clothes inside [were] moving like somebody had shifted from this side of the closet to [the other] side, so I made the decision to open up the closed door." As Harris opened up the closet door, he was shot in the jaw. He and his fellow officers responded by firing multiple shots at the closet door.

After the exchange of gunfire, Harris and the other officers retreated outside of the bedroom to reload their weapons and to get medical treatment for Harris. At this time, Officer Perry McEwen heard a female voice screaming from inside the bedroom. Officer McEwen responded by instructing the woman to come out with her hands visible. McClain then crawled out of the bedroom, down the hallway, on her knees and hands. After McClain exited the bedroom, McEwen repeated his instructions to Tab, who responded by crawling out on his hands and knees. After securing Tab, McEwen asked him whether anyone else was in the bedroom; Tab replied "no one." Officer Terry Bishop then asked where the shooter was; Tab replied that he thought he was being robbed. When asked what caliber gun he was using, Tab answered "nine-millimeter." McEwen and his fellow

officers then conducted a sweep of the bedroom, confirming that McClain and Tab were the only individuals, other than the police officers, in the bedroom during the exchange of gunfire.

Following the shooting, the officers applied for and received a crime scene search warrant, authorizing a search for "Blood, Fingerprints, Hair, Fibers, Weapons, Trace Evidence, and Bullets" within the apartment. In conducting the search, officers found six nine-millimeter shell casings and a nine-millimeter pistol in the bedroom closet. The officers also found spoons containing heroin residue inside the apartment.

On March 31, 2004, a grand jury in the United States District Court for the Western District of Tennessee returned a one-count indictment against Tab in connection with this incident, charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On November 10, 2004, a superseding indictment against Tab was entered, charging Tab with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), being a fugitive from justice in possession of a firearm, in violation of 18 U.S.C. § 922(g)(2), and being an unlawful user addicted to a controlled substance in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3).

On August 27, 2004, Tab filed a motion to suppress the evidence found in the apartment. After hearing arguments on the motion, the district court denied Tab's motion. Following a seven day jury trial, Tab was convicted on all three counts of the superseding indictment.

At sentencing, neither party disputed the calculation contained in the Presentence Investigation Report ("PSR") that the applicable Guidelines range for Tab was 188-235 months of incarceration. The government, however, took the position that Tab could not be given consecutive

sentences for violating three separate subsections of 18 U.S.C. § 922(g) in a single occurrence.[1]

Thus, Tab was limited to the statutory maximum sentence of ten years of incarceration, as provided

in 18 U.S.C. § 924(a)(2). Tab's counsel conceded that ten years was an appropriate sentence. The

district court agreed that the intensive drug treatment program was warranted and imposed a sentence

of ten years of incarceration and ordered Tab to pay a fine of $200,000. This timely appeal followed.

## II.

First, Tab argues that the evidence offered against him at trial was insufficient to support the

jury's finding of guilt. Specifically, Tab contends that "no witness saw the Defendant with a gun or

saw the Defendant coming out of the closet."

"The standard for evaluating claims that a conviction is not supported by sufficient evidence

presents a very difficult hurdle for the criminal appellant . . . ." *United States v. Winkle*, 477 F.3d

407, 413 (6th Cir. 2007). In reviewing a challenge to the sufficiency of the evidence to support a

criminal conviction, "the relevant question is whether, after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." *United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007)

(quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "[P]hysical evidence is not required to

sustain a conviction," *United States v. Davis*, 306 F.3d 398, 409 (6th Cir. 2002), and circumstantial

evidence alone is sufficient to support a jury's finding of guilt. *United States v. Barnett*, 398 F.3d

---

[1]*See United States v. Fraser*, Nos. 92-6238, 92-6241, 1993 U.S. App. LEXIS 24067, at *6 n.3 (6th Cir. Sept. 15, 1993) (unpublished); *see also United States v. Munoz-Romo*, 989 F.2d 757, 759 (5th Cir. 1993).

516, 522 (6th Cir. 2005). On appeal, we "draw all available inferences and resolve all issues of credibility in favor of the [factfinder's] verdict." *United States v. Rayborn*, 495 F.3d 328, 338 (6th Cir. 2007) (internal quotations omitted).

Tab's challenge to the sufficiency of the evidence plainly lacks merit, as there was significant circumstantial evidence offered against him to support the jury's finding that he possessed a gun on January 26, 2004. When initially questioned by the SWAT officers, Sean Jackson stated that only two people – "[a] guy and a girl" – were present in the back bedroom of Erica McClain's apartment. McClain's testimony was consistent with Jackson's statement, as she stated that only she and Tab were in the bedroom at the time of the execution of the search warrant. McClain stated that when she heard the police make their initial entrance into the apartment, she saw Tab head in the direction of the closet. After the shooting, McClain told Shelby County Sheriff's officers that when the SWAT officers had retreated following the exchange of gunfire, Tab left his location in the bedroom, laid next to McClain, and asked whether he had been shot during the gunfire.

The most damning evidence offered against Tab at trial, however, was his statement made to Officer Bishop that he fired a nine-millimeter pistol during the shooting. When conducting the crime scene search following the shooting, officers found a nine-millimeter pistol and nine-millimeter shell casings in the bedroom closet. At trial, none of the officers present at the shooting testified that they carried a nine-millimeter pistol on January 26, 2004; rather, most officers carried weapons that fired .40 caliber and .223 caliber ammunition.

On appeal, Tab acknowledges Officer Bishop's testimony concerning his admission that he fired a nine-millimeter handgun, but contends that Officer Bishop's statement is "not credible." Despite his argument to the contrary, it is well-established that in assessing the sufficiency of the evidence, we "do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury," and we make "all reasonable inferences and credibility decisions in support of the jury's verdict." *United States v. Crowell*, 493 F.3d 744, 748 (6th Cir. 2007) (quoting *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995) and *United States v. Hughes*, 895 F.2d 1135, 1140 (6th Cir. 1990)). Thus, "[a]ttacks on witness credibility are simple challenges to the quality of the government's evidence and not the sufficiency of the evidence." *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006). The jury apparently accepted Officer Bishop's testimony, and it is not within the province of this court to disregard the jury's credibility determination.

In sum, there was ample evidence offered against Tab at trial – most notably McClain's testimony that she saw Tab head towards the bedroom's closet when the sheriff's officers entered the apartment and Tab's admission that he had fired a nine-millimeter firearm – to support the jury's finding of guilt.

## III.

In his second assignment of error, Tab challenges the district court's denial of his motion to suppress. We review a district court's denial of a motion to suppress for clear error with respect to the court's findings of fact and de novo with regard to its conclusions of law. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006).

Before trial, Tab moved the district court to suppress the evidence recovered at McClain's apartment following the shooting and physical evidence recovered during an inventory search of Tab conducted at jail – specifically, the nine-millimeter pistol, gunshot residue taken from Tab's body, and Tab's underwear, used to test gunshot residue. Tab argued that the original search warrant was defective because its supporting affidavit did not state when the confidential informant had seen drugs or weapons at the apartment and because it recited events that allegedly never occurred. The district court held a hearing on Tab's motion on March 18, 2005. The court denied Tab's motion, ruling that because the motion pertained solely to the first search warrant rather than the second crime scene search warrant, even assuming *arguendo* that the initial search was improper, the shooting of Officer Harris constituted an intervening crime that provided a sufficient basis for the second warrant.

In so holding, the district court relied on our decision in *Feathers v. Aey*, 319 F.3d 843, 852 n.2 (6th Cir. 2003), wherein we stated:

> [T]he "fruit of the poisonous tree" doctrine, which was relied upon below and which bars the introduction of evidence that is the product of an unconstitutional search, seizure, or interrogation, cannot apply in this context to prevent officers from arresting those who commit crimes during an unconstitutional search, seizure, or interrogation. If the doctrine did cover such situations, an individual who is unconstitutionally seized would have license to commit any offense he or she desired and could not be arrested for it.

We agree with the district court that Tab's motion to suppress is foreclosed by *Feathers*. Our instruction in *Feathers* that the "fruit of the poisonous tree" doctrine does not protect a defendant who has committed a crime during an unconstitutional search is consistent with other state and

federal court decisions on this issue.  *See* 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 1.13 (4th ed. 2007) (observing that because "'application of the exclusionary rule in such fashion would in effect give the victims of illegal searches a license to assault and murder,' it is not surprising that the courts have held that an accused 'cannot effectively invoke the fourth amendment to suppress evidence of his own unlawful conduct which was in response to police actions in violation of the amendment.'") (quoting *State v. Miller*, 194 S.E.2d 353 (N.C. 1973) and *People v. Abrams*, 271 N.E.2d 37 (Ill. 1971)).  Although we have not had occasion to expand on our statement in *Feathers*, our sister circuits have "likewise held that the fruit of the poisonous tree doctrine does not apply to new crimes committed by an individual who has been unlawfully detained."  *United States v. Awadallah*, 349 F.3d 42, 81 (2d Cir. 2003) (citing *United States v. Pryor*, 32 F.3d 1192, 1195-96 (7th Cir. 1994); *United States v. Smith*, 7 F.3d 1164, 1167 (5th Cir. 1993); *United States v. Mitchell*, 812 F.2d 1250, 1253 (9th Cir. 1987); *United States v. Garcia-Jordan*, 860 F.2d 159, 161 (5th Cir. 1988); *United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir. 1982)).

Thus, Tab's argument on appeal that the district court should have allowed him to offer testimony and evidence at the motion to suppress hearing is of no moment.  Here, the district court ruled correctly that, regardless of whether the original search was valid, Tab's shooting at Officer Harris constituted a new crime.  The facts and circumstances of this newly committed crime provided the necessary basis to arrest Tab and to issue the crime scene search warrant.  Because Tab's motion pertained solely to the original search, any testimony regarding it would have been

superfluous to the disposition of the motion. The district court properly denied Tab's motion to suppress, and its decision to conduct the hearing without additional testimony was not error.

IV.

Tab next argues that he was denied his Sixth Amendment right to a fair and impartial jury. He claims two alleged errors by the district court: (1) its refusal to grant his motion to strike a potential juror for cause where the juror's husband served warrants and the juror admitted to an emotional reaction to the case when she had heard about it on the local television news; and (2) its failure to excuse a juror who had informed the court that he had met the father of Officer Chris Harris. Tab's argument lacks merit as it applies to each juror.

The Sixth Amendment guarantees criminal defendants the right to be tried by an impartial jury. U.S. CONST. amend VI. "The task of empaneling an impartial jury is left to the sound discretion of the district court, and we review a district court's voir dire of the jury venire for abuse of that discretion." *United States v. Guzman*, 450 F.3d 627, 629 (6th Cir. 2006); *see also Wilson v. Morgan*, 477 F.3d 326, 346 (6th Cir. 2007) (observing that this court reviews for abuse of discretion a court's decision not to strike a juror for cause). "Only in the case of manifest error will we overturn a finding of juror impartiality." *Guzman*, 450 F.3d at 629 (citing *Mu'Min v. Virginia*, 500 U.S. 415, 428 (1991)).

Tab first contends that potential juror Shoemake should have been stricken for cause. During voir dire, Shoemake alerted the court that she recalled the allegations against Tab as described by

a local television news channel report following the shooting. She explained her initial reaction to

the news report:

> I remember on the news, and it was supposedly the sheriff's deputies were shot, that's what my husband does, and I tried to get him to quit his job, and I mean it almost made me physically ill, so I don't know. And I know it's a separate charge, but I don't know if that is not going to be on my mind.

When asked whether she could set aside her initial reaction and be fair and impartial, Shoemake

responded: "I don't want to be affected. . . . I want to try, I want to say yes I can, and I know I'm just

saying the reaction that I had when it hit me, I just wanted y'all to know that." Tab challenged the

potential juror for cause. The district court overruled Tab's challenge, but indicated that a

peremptory challenge would be appropriate. Tab later used a peremptory challenge to excuse

Shoemake from serving as a juror.[2]

Because Shoemake was eventually excused from the jury, Tab's argument is foreclosed by

the Supreme Court's opinion in *Ross v. Oklahoma*, 487 U.S. 81 (1988). In *Ross*, the Court addressed

the exact question raised by Tab here – whether the Sixth Amendment is violated when a defendant

is forced to use a peremptory challenge to remove a juror who should have been excused for cause.

*Ross*, 487 U.S. at 83. The Court held that it is not, explaining:

> It is well settled that the Sixth and Fourteenth Amendments guarantee a defendant on trial for his life the right to an impartial jury. Had [the potential juror] sat on the jury that ultimately sentenced petitioner to death, and had petitioner properly preserved his right to challenge the trial court's failure to remove [the potential juror] for cause, the sentence would have to be overturned. But [the potential juror] did not

---

[2]Defendant Tab does not claim that in excusing Shoemake he was forced to exhaust all of his peremptory challenges.

sit. Petitioner exercised a peremptory challenge to remove him, and [the potential juror] was thereby removed from the jury as effectively as if the trial court had excused him for cause.

Any claim that the jury was not impartial, therefore, must focus not on [the potential juror], but on the jurors who ultimately sat. None of those 12 jurors, however, was challenged for cause by petitioner, and he has never suggested that any of the 12 was not impartial. "[T]he Constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." *Lockhart v. McCree*, 476 U.S. 162, 184 (1986). * * * We conclude that petitioner has failed to establish that the jury was not impartial.

*Id.* at 85.

*Ross* is directly controlling here. Regardless of whether the district court should have granted Tab's challenge to Shoemake for cause, she did not ultimately sit on the jury.[3] On appeal, aside from his claim concerning juror Gould (discussed below), Tab has not provided any evidence to suggest that the resulting jury was biased. Thus, his Sixth Amendment claim concerning Shoemake must fail. *See Hill v. Brigano*, 199 F.3d 833, 844 (6th Cir. 1999) ("It is not enough for the defendant to show that the decision to exclude the two jurors was improper. He also must show that the jury selected was biased.").

Tab's Sixth Amendment claim concerning juror Gould likewise lacks merit. During the direct examination of Officer Harris at trial, Gould alerted the court that he had met Officer Harris's father in the 1970's. The court inquired about the impact that recognition would have on Gould:

---

[3]Because Tab's claim is precluded by *Ross*, we assume *arguendo* that the district court should have granted Tab's motion to strike Shoemake. We therefore express no opinion on the district court's decision to overrule Tab's motion to strike Shoemake for cause.

> Q:  [I]s it going to affect . . . your ability to decide the case?
>
> A:  I'm certain that it won't affect my judgment, I'm really confident of that, but I felt just obligated to tell you that.
>
> * * *
>
> Q:  Is there anything about the relationship with [Officer Harris's] father that would cause you to favor –
>
> A:  Not at all.  He was actually – the reason I met him is because he went to – he or his wife went to high school with my wife, but that's the only – haven't seen him since, but I just felt obligated to tell you.

The court then asked if Tab's attorney had any questions for Gould; the attorney replied that he did not.  No motion to replace Gould was made, and Gould apparently continued to sit as a juror.

On appeal, Tab argues that the district court's failure to excuse Gould deprived Tab of his Sixth Amendment right to a fair trial.  We disagree.  First, because he did not raise an objection in the district court to Gould remaining on the jury, we review Tab's challenge concerning Gould for plain error.  *United States v. Brown*, 332 F.3d 363, 370 (6th Cir. 2003).  "To establish plain error, a claimant must show:  (1) error, (2) that is plain, (3) that affects the defendant's substantial rights, and (4) that 'seriously affects the fairness, integrity, or public reputation of the judicial proceedings.'"  *Id.* (quoting *United States v. Cotton*, 535 U.S. 625, 631 (2002)).  Tab has not explained on appeal how the presence of Gould on the jury seriously affected the fairness, integrity, or the public reputation of his criminal trial.

Moreover, the district court acted properly in allowing Gould to remain on the jury panel.

A juror is considered to be biased if he cannot "conscientiously apply the law and find the facts." *Wainwright v. Witt*, 469 U.S. 412, 423 (1985). Jurors are presumed to be impartial, *see Guzman*, 450 F.3d at 629, and the question of whether a juror is biased "is plainly one of historical fact." *Patton v. Yount*, 467 U.S. 1025, 1036 (1984). A trial court's determination of a juror's credibility is entitled to "special deference," *Patton*, 467 U.S. 1025, 1038 (1984), and the court's finding of impartiality may be "overturned only for 'manifest error.'" *Id.* at 1031.

As we have explained elsewhere, the ultimate question in assessing a juror's impartiality "is whether the 'juror swore that he could set aside any opinion he might hold and decide the case on the evidence, and [whether] the juror's protestation of impartiality [should be] believed.'" *White v. Mitchell*, 431 F.3d 517, 538 (6th Cir. 2005) (quoting *Patton*, 467 U.S. at 1036). Here, Gould assured the court that he was "certain" and "really confident" that his prior encounter with Officer Harris's father would not affect his judgment in the case and explained that he had not seen Harris's father since the 1970's. The district court credited this statement of impartiality, as did Tab's counsel, apparently. Given the opportunity to probe further into Gould's relationship with Harris's father, Tab's counsel declined. On appeal, Tab has not cited any evidence, or made any argument, regarding why the district court erred by crediting Gould's statement of impartiality. Thus, we conclude the district court did not err in allowing Gould to remain on the jury and hold that Tab's Sixth Amendment rights were not violated by his service on the jury.

V.

- 14 -

Tab next argues that the district court abused its discretion in admitting some testimonial evidence at trial. We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Franco*, 484 F.3d 347, 350-51 (6th Cir. 2007). "Broad discretion is given to district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly overruled." *Id.* (quoting *United States v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006)). Furthermore, if no objection to the introduction of the evidence was made, we review admission of the evidence for plain error only. *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 548 (6th Cir. 2003); *United States v. Morrow*, 977 F.2d 222, 228 (6th Cir. 1992). Finally, "[w]here an error is not of constitutional dimension, it is harmless unless it is more probable than not that the error materially affected the verdict." *United States v. Fountain*, 2 F.3d 656, 668 (6th Cir. 1993) (quoting *United States v. Martin*, 897 F.2d 1368, 1372 (6th Cir. 1990)).

Invoking Federal Rule of Evidence 404(b), Tab first argues that the district court abused its discretion in allowing testimony that he had previously used drugs and possessed a weapon. Because Tab raised no objection to this testimony at trial, we review for plain error. *Morrow*, 977 F.2d at 228. As the government asserts correctly, Tab was charged with being a user and an addict to controlled substances in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3). For this reason, the testimony at issue regarding his use of drugs was relevant to the elements of that charge. The same is true regarding the testimony of Tab's prior possession of the same nine-millimeter pistol that was found in the bedroom closet following the shooting. Thus, this testimony was not offered as evidence of other bad acts to prove Tab's character, but rather to show possession of the firearm

for which Tab was indicted. We conclude, therefore, that the district court did not abuse its discretion in admitting this testimony.

Tab next argues that the district court erred in admitting testimony concerning the use of the SWAT team in executing the warrant, claiming that this testimony was prejudicial and irrelevant to whether he possessed a weapon. The government contends that this "scene-setting" evidence was properly admitted to give the jury necessary background and context. The government also points out that the district court instructed the jury on the limited applicability of this scene-setting testimony.

Federal Rule of Evidence 403 provides that the district court may exclude relevant evidence "if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403 (emphasis added).

We do not conclude that the prejudicial effect of the testimony describing the use of the SWAT team substantially outweighed its probative value. We keep in mind that "the district court enjoys broad discretion in balancing probative value against potential prejudicial impact," *United States v. Layne*, 192 F.3d 556, 573 (6th Cir. 1999), and on review, we view "evidence challenged under Rule 403 'in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.'" *Id.* (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)).

Here, the challenged testimony – that the SWAT team was used, that it had been informed that firearms were inside the apartment, and that the SWAT team typically makes high risk entries – was offered in the beginning of each witness's testimony, as part of explaining who each witness was and his relevance to the case. This bolsters the government's claim that this testimony was used to provide context for the search of the apartment. Moreover, where the disputed testimony involved hearsay – that is, where the testimony involved information relayed by the confidential informant to the police that guns were inside the apartment – the district court gave limiting instructions to the jury, making clear that the informant's statements were being introduced to explain the police officers' behavior rather than for the truth of the informant's statements. The use of a curative or limiting instruction may diminish or "render[] harmless the erroneous admission of prejudicial evidence." *Layne*, 192 F.3d at 573 (citing *United States v. Walton*, 908 F.2d 1289, 1293-94 (6th Cir. 1990)). Finally, in assessing this alleged error and its prejudicial effect, we note that the evidence of Tab's guilt offered at trial was overwhelming.

Tab also claims error requiring reversal in the admission of Officer Bishop's testimony that spoons containing heroin residue were found in the apartment. Tab raises two grounds for this argument: (1) Rule 403; and (2) Rules 701 and 702, which limit a layperson's ability to testify about facts requiring specialized knowledge. Tab's challenge to this testimony fails.

First, regarding Tab's Rule 403 argument, because this testimony was not objected to at trial, we review its admission for plain error. Second, testimony concerning the presence of drugs is relevant to Tab's indictment for being an unlawful user of controlled substances in possession of a

firearm. Thus, any prejudicial effect of this testimony – and Tab does not attempt to explain on appeal how this testimony is prejudicial – does not substantially outweigh its probative value.

Moreover, because he failed to raise his Rule 701 and 702 challenges to this testimony at trial, we review the admissibility of this expert testimony for plain error. *United States v. Johnson*, 488 F.3d 690, 697 (6th Cir. 2007) ("This court reviews issues involving the admissibility of expert testimony for plain error where no objection was made at trial."). Tab's *Daubert* challenge fails on plain-error review in that Tab still has not explained why Officer Bishop was allegedly unqualified to offer his testimony. At issue is Officer Bishop's testimony that he field-tested two spoons found at the apartment following the shooting and that the spoons both tested positive for heroin. It appears from the record that Officer Bishop had personal knowledge of the subject of his testimony. Further, Tab has not cited any record evidence suggesting that field testing is not part of Officer Bishop's regular duties or that his testimony was based on specialized knowledge that he did not possess. For these reasons, we conclude that Tab's Rule 701 and 702 challenge to Officer Bishop's testimony is without merit.

Finally, Tab asserts that "Rule 402 and 403 were violated in that evidence was adduced concerning the injuries of the officer." As the government notes correctly, the evidence to which Tab now objects was elicited by his own attorney on cross-examination. Thus, the district court did not abuse its discretion in allowing this testimony. *United States v. Abdullah*, 162 F.3d 897, 904 (6th Cir. 1998) (finding no abuse of discretion in admitting testimony where a "review of the transcript of defense counsel's cross-examination of the prosecution witness who offered the allegedly

damaging information reveals that the defendant's own attorney elicited the testimony to which he now objects").

## VI.

In his next assignment of error, Tab argues that his Fifth Amendment right against self incrimination was violated by the prosecutor's alleged comment on Tab's failure to testify. In particular, he relies upon the following exchange between the prosecutor and Tab's girlfriend, McClain:

Q: And you have talked about the case with Tab Virgil too, haven't you?

A: I can't recall if we've talked in detail about the case, but I don't know exactly what we have talked about throughout these 18 months.

Q: You haven't talked to him about the case? You can't remember specifically whether you have talked to the defendant about this case?

A: Yeah, as far as what in detail about the case.

Q: Well, have you ever asked him what he was doing while you were under the bed?

A: No.

Q: You have never asked him?

A: No.

Q: In all the hours and hours and hours that you have talked to him on the telephone and during all the times that you visited him at the jail, you have never asked him what he did?

A: No.

Q: Never?

> A:     No.
>
> Q:     You don't care?
>
> A:     I care, but I let everything speak for itself.  No, I haven't ever asked him.
>
> Q:     You have never asked this man right here what happened?
>
> A:     No.
>
> Q:     Has he ever told you what happened?
>
> A:     No, I can't recall him telling me anything as far as what he was doing that day.  I can't recall him telling me anything as far as that.

Tab argues that he has a constitutional right not to testify, and the prosecutor's line of questioning was posed in order to suggest a negative inference from Tab's silence.

"It is well established that a prosecutor's direct reference to a criminal defendant's failure to testify is a violation of that defendant's Fifth Amendment privilege against compelled self-incrimination." *Byrd v. Collins*, 209 F.3d 486, 533-34 (6th Cir. 2000) (citing *Griffin v. California*, 380 U.S. 609 (1965), *Lent v. Wells*, 861 F.2d 972, 975 (6th Cir. 1988)).  In addition, "indirect references on the failure to testify also can violate the Fifth Amendment privilege." *Id.*; *see also United States v. Craft*, 220 F. App'x 304, 306 (5th Cir. 2007) (observing that answers sought on cross-examination implicitly commented on defendant's failure to testify, but holding that this indirect reference was harmless in light of overwhelming evidence of defendant's guilt).  The issue of whether the prosecutor impermissibly commented on a defendant's refusal to testify is a mixed question of law and fact, and we review it de novo.  *United States v. Layne*, 192 F.3d 556, 579 (6th Cir. 1999).

In addressing a defendant's claim that the prosecutor impermissibly commented on his failure to testify, we undertake "a probing analysis of the context of the comment," and consider the following four factors:

(1)     Were the comments "manifestly intended" to reflect the accused's silence or of such a character that the jury would "naturally and necessarily" take them as such;

(2)     Were the remarks isolated or extensive;

(3)     Was the evidence of guilt otherwise overwhelming; [and]

(4)     What curative instructions were given, and when.

*Byrd*, 209 F.3d at 533-34 (quoting *United States v. Robinson*, 651 F.2d 1188, 1197 (6th Cir. 1981), and *United States v. Moore*, 917 F.2d 215, 225 (6th Cir. 1990)). On appeal, the government argues that the line of questioning at issue was intended to highlight McClain's bias as Tab's girlfriend.

During her direct examination, McClain repeatedly attempted to distance herself from statements that she had made previously to the Shelby County Sheriff's officers after the shooting. McClain testified that she did not remember, or no longer agreed with, her prior statements to investigators that Tab arrived in Memphis from New Orleans on January 16, 2004; that she recalled hearing gunshots fired from the closet area of the bedroom during the encounter with the SWAT team; that after the initial exchange of gunfire with the SWAT team, Tab moved towards McClain and asked her whether he had been hit with a bullet; that prior to January 26, 2004, she had seen Tab associated with the nine-millimeter pistol that was found in the closet following the shooting; and that she knew that Tab shot Officer Harris at the apartment. On cross-examination, McClain again

tried to explain away her prior statements made to police, testifying that the change in her testimony was due to the passage of time, in which she had more time to think about the events of the shooting and had learned more about the shooting.

In this context, the line of questioning at issue is more properly interpreted as an attempt to impeach McClain's trial testimony by casting doubt to her impartiality and credibility, rather than a comment on Tab's failure to testify. "This Circuit has explained that we will not find 'manifest intent' where some other explanations for the prosecutor's comments are equally possible. In addition, we have made clear that the question is not whether the jury possibly or even probably would view the statements as comments on the defendant's failure to testify, 'but whether the jury necessarily would have done so.'" *Byrd*, 209 F.3d at 534 (quoting *United States v. Ursery*, 109 F.3d 1129, 1135 (6th Cir. 1997)).

Here, it appears unlikely that the jury would have interpreted the prosecutor's line of questioning as a comment on Tab's failure to testify, and the questions were not "manifestly intended" to comment on Tab's silence. Given McClain's status as Tab's girlfriend, along with her repeated attempts to back away from her prior statements that were damaging to Tab, it is probable – let alone possible – that the jury would have viewed the prosecutor's attempt to highlight McClain's statement that she never spoke with Tab about the shooting as an attempt to impeach McClain's credibility.[4]  Moreover, the disputed questions appear isolated. On appeal, Tab has not

---

[4]The timing of McClain's testimony makes it particularly doubtful that the jury would necessarily have viewed this exchange as a comment on Tab's failure to testify. McClain testified on August 5 during the government's case-in-chief. The government had not yet rested their case,

pointed to any statement or comment made by the prosecutor in his closing argument that referenced Tab's failure to testify. Under these circumstances, we hold that Tab's Fifth Amendment right against self-incrimination was not affected.[5]

Tab also raises the related claim that in this exchange with McClain, the prosecutor impermissibly commented upon his right to remain silent. *See Doyle v. Ohio*, 426 U.S. 610, 619 (1976) (holding "that the use for impeachment purposes of [the defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment"). This claim also lacks merit. First, it is doubtful that any *Doyle* error occurred here. Construed generously in Tab's favor, the evidence shows that, at most, the prosecutor commented on Tab's failure to discuss the shooting with his girlfriend, McClain. *Doyle*, however, concerned the defendant's failure to explain his version of the underlying events to the arresting officer, not to private citizens. *See United States v. Henry*, 206 F. App'x 452, 457 (6th Cir. 2006) (distinguishing *Doyle* and holding that prosecutor's comment that defendant failed to tell his version of events to his friends and witnesses was a "permissible method of impeaching [the defendant's] credibility"). Second, even assuming that a *Doyle* error occurred here, any such error was harmless, as the

---

and Tab still had the opportunity to testify after the government rested its proof.

[5]Tab also argues on appeal that the prosecutor commented on his failure to testify by eliciting testimony from Paul Sherman, who testified that when serving McClain a federal grand jury subpoena in the presence of Tab, Tab told McClain not to make any statements to the police. Tab's Fifth Amendment claim with respect to Sherman fails because this testimony was not "manifestly intended" to comment on Tab's failure to testify at trial, but rather to relay an incriminating statement from defendant.

prosecutor did not allude to Tab's silence during his closing argument and the evidence offered

against Tab at trial was overwhelming. *See United States v. Tarwater*, 308 F.3d 494, 511-12 (6th

Cir. 2002) (observing that this court ordinarily reviews "prosecutorial comments about a defendant's

*post-Miranda* silence under a harmless error standard").

VII.

Next, Tab argues that his sentence is unreasonable. Tab claims that his sentence is

substantively unreasonable because the Guidelines included a fourteen-point increase under U.S.S.G.

§ 2K2.1(c)(1) due to the district court's finding that Tab possessed the firearm in connection with

the commission of assault with intent to commit murder. Tab contends that the jury was required

to "expressly conclude that the Defendant had the requisite criminal intent to satisfy the elements

of assault with intent to commit murder or attempted murder." In addition, Tab also argues briefly

that his sentence is procedurally unreasonable.

We review a district court's sentence for "reasonableness." *United States v. Ming Liou*, 491

F.3d 334, 337 (6th Cir. 2007). Reasonableness has both procedural and substantive components.

*United States v. Keller*, 498 F.3d 316, 322 (6th Cir. 2007). "[A] sentence may be substantively

unreasonable where the district court 'select[s] the sentence arbitrarily, bas[es] the sentence on

impermissible factors, fail[s] to consider pertinent § 3553(a) factors, or giv[es] an unreasonable

amount of weight to any pertinent factor.'" *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir.

2006) (quoting *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005). A sentence may be

procedurally unreasonable, on the other hand, if "the district judge fails to 'consider' the applicable

Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *Webb*, 403 F.3d at 383.[6]

We apply a clear error standard of review to findings of fact made at sentencing. *United States v. Katzopoulos*, 437 F.3d 569, 574 (6th Cir. 2006); *United States v. Orlando*, 363 F.3d 596, 600 (6th Cir. 2004).

Tab's first argument – that the district court relied on an erroneously-calculated Guideline range in sentencing him to 120 months of incarceration – is forfeited. Thus, we review Tab's argument for plain error. *See United States v. Bucheit*, 134 F. App'x 842, 862 (6th Cir. 2005) (in post-*Booker* appeal, holding that "because Defendant never disputed the application of the public official and obstruction of justice enhancements [to his Guidelines calculation], we conclude he has forfeited any Sixth Amendment challenge to the application of those enhancements" and reviewing for plain error). Here, the PSR included a fourteen-point increase to Tab's offense level score because the nine-millimeter firearm was used in connection with the offense of attempted murder. Tab did not object to this recommendation, and at the sentencing hearing, the district court found that Tab fired shots at Officer Harris and applied the PSR's Guidelines recommendation. Because Tab did not object to the PSR's factual findings, he has forfeited his challenge on appeal to the district

---

[6]We noted recently that "the border between factors properly considered 'substantive' and those properly considered 'procedural' is blurry if not porous, [but] our *post-Booker* jurisprudence requires us to consider each of these factors in determining whether a sentence is reasonable." *Ming Liou*, 491 F.3d at 337.

court's Guidelines calculation, and we conclude that the district court did not commit plain error in its factual findings.

We consider Tab's procedural reasonableness challenge to be waived. On appeal, Tab has not attempted to explain which factors listed in 18 U.S.C. § 3553(a) the district court failed to consider, but rather has summarily asserted that "from a procedural standpoint this sentence is not reasonable." Because Tab has not developed this argument in his brief, he has waived appellate consideration of this claim. *Flores*, 477 F.3d at 439; *Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 448 (6th Cir. 2006) ("Plaintiff's one sentence argument to this effect is therefore insufficient to preserve this argument on appeal.").

Even if we were to consider Tab's procedural reasonableness claim, it nevertheless fails. "This court has stated repeatedly that it has 'never required the ritual incantation of [the § 3553(a)] factors to affirm a sentence.'" *United States v. Esteppe*, 483 F.3d 447, 453 (6th Cir. 2007) (quoting *United States v. Williams*, 436 F.3d 706, 709 (6th Cir. 2006)). Although the district court need not recite the § 3553(a) factors explicitly in order to allow for a meaningful appellate review, there must be "sufficient evidence in the record to affirmatively demonstrate the court's consideration" of those factors. *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006).[7] Here, the district court plainly

---

[7]Title 18 U.S.C. § 3553(a) instructs a sentencing court to consider the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with

- 26 -

considered "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need for the sentence imposed "to reflect the seriousness of the offense" when it expressed its frustration in sentencing Tab to the statutory maximum sentence of ten years of imprisonment. The court also granted Tab's request to recommend the intensive drug treatment program, which reflects the district court's consideration of "the kinds of sentences available" and the need for the sentence imposed to "provide the defendant with needed . . . medical care . . . ." Finally, the court also indicated its consideration about the need for restitution, noting the civil complaint filed by Officer Harris against Tab in relation to the shooting.

Because Tab's challenge to the reasonableness of his sentence has been forfeited, and because the court adequately considered the § 3553(a) factors, we affirm Tab's sentence.

VIII.

Finally, Tab argues that he received ineffective assistance of counsel at trial. To demonstrate ineffective assistance of counsel sufficiently flagrant to compel reversal of a conviction, a defendant must show both that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Performance of counsel is deficient if the conduct "fell below an objective standard of reasonableness," and there

---

needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

- 27 -

is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 688-89.

A claim of ineffective assistance of counsel is generally not reviewed on direct appeal. "Ineffective assistance claims are more properly raised in a post-conviction proceeding brought pursuant to 28 U.S.C. § 2255, where the record regarding counsel's performance can be developed in more detail. This Court typically will not review a claim of ineffective assistance on direct appeal except in rare cases where the error is apparent from the existing record." *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006) (internal citations omitted). On appeal, Tab has not explained why his ineffective assistance of counsel claim should be reviewed on direct appeal rather than through a later habeas petition, nor how his trial counsel's error is apparent from the record. Rather, he cites to several instances at trial where he claims his trial counsel should have made objections and makes a series of conclusory allegations. As we have reasoned recently, such an argument does not warrant review on direct appeal:

> Although [defendant] maintains that the record is sufficient to support a claim of ineffective assistance of counsel, the actions of counsel referred to in the brief are merely conclusory statements and the record on this issue is not sufficiently developed for us to evaluate this claim. Ineffective assistance claims are more properly raised in a post-conviction proceeding brought pursuant to 28 U.S.C. § 2255, where the record regarding counsel's performance can be developed in more detail. . . . This Court typically will not review a claim of ineffective assistance on direct appeal except in rare cases where the error is apparent from the existing record. Because any error is not apparent from the record before us, we decline to address [defendant's] claim of ineffective assistance of counsel.

*Winkle*, 477 F.3d at 421 (internal citation and quotation omitted); *see also Lopez-Medina*, 461 F.3d at 737 (declining to review ineffective assistance of counsel claim on direct review where the "record

contains no evidence regarding why, for example, defense counsel chose not to file any additional motions beyond his initial motion to suppress or why he chose not to challenge the agents as experts on matters pertaining to narcotics trade" because "[a]bsent evidence specifically addressing counsel's performance, we cannot determine whether his actions reflected a reasoned trial strategy"). Because the record is not sufficiently developed for us to evaluate this argument, we likewise decline to address Tab's claim of ineffective assistance of counsel.

IX.

For the reasons set forth above, we affirm Tab's convictions under 18 U.S.C. §§ 922(g)(1), (2) and (3), and his sentence of 120 months of incarceration.

**KAREN NELSON MOORE, Circuit Judge, concurring in part and concurring in the judgment.** I join the majority opinion in nearly every respect, but I write separately because I believe that the government violated Tab's right to remain silent under *Doyle v. Ohio*, 426 U.S. 610 (1976). However, because I agree with the majority's conclusion that any *Doyle* error was harmless in this case due to overwhelming evidence of Tab's guilt, I concur in the judgment.

Tab notes that his girlfriend Erica McClain spoke with him "while he was incarcerated and subsequent to his retention of counsel," Appellant Br. at 48, and contends that the prosecutor's repeated questioning of McClain at trial about whether Tab had ever discussed his case with her during her visits with him at the jail violated his right to remain silent. *See* J.A. at 402-03 (Trial Tr. at 1239-40). "When a defendant is in the presence of the government, he has the right to remain silent in the face of questioning, whether the questioning is from a private individual or the police." *Franklin v. Duncan*, 884 F. Supp. 1435, 1447 (N.D. Cal.), *aff'd*, 70 F.3d 75 (9th Cir. 1995). Given the "well-known need for correctional institutions to monitor inmate conversations," *United States v. Madoch*, 149 F.3d 596, 602 (7th Cir. 1998), when a defendant in custody chooses to remain silent and declines to discuss his case, that silence may not be used against him.

Tab's case differs from *United States v. Henry*, 206 F. App'x 452, 457 (6th Cir. 2006), in that the government in *Henry* did not refer to the defendant's silence while in custody, the government's remark in *Henry* was used to impeach the testifying defendant, and the comment in *Henry* was a single, isolated statement, unlike the repeated questioning of McClain at Tab's trial.

In sum, I believe that a *Doyle* error occurred in this case, but that the error was harmless for the reasons stated in the majority opinion.