UNITED STATES of America,
Plaintiff,

v.

**Roger MATHEWS, Jr., Defendant.**

Case No. 3:09–cr–72.

United States District Court,
S.D. Ohio,
Western Division,
at Dayton.

June 4, 2010.

protects the private employment of medical marijuana users.

William Firman Schenck, Jr., U.S. Attorney's Office, Dayton, OH, for Plaintiff.

**ENTRY AND ORDER DENYING MOTION TO SUPPRESS, (DOC. 13), AND MEMORANDUM IN SUPPORT. (DOC. 29).**

THOMAS M. ROSE, District Judge.

Pending before the Court is Defendant's Motion to Suppress, (doc. 13), and a supporting memorandum. (Doc. 29.) Therein, Defendant requests that the Court suppress evidence seized as the result of an encounter between Defendant and law enforcement agents during an investigation. Although the government requested and was granted three extensions of time in order to file a response, no response was timely filed.[1] Having considered the facts

---

1. On May 26, 2010, the Court granted a third motion for extension of time, but noted that "no future extensions will be given." Thus, the government's request for a fourth extension on June 1, 2010 was denied and the June 2, 2010 government response that was filed will be disregarded, making a reply unnecessary.

as developed at a hearing on the matter and reviewed the legal arguments of the Defendant, the Court will deny the motion to suppress, because although the investigating officer did not have sufficient cause for the initial traffic stop, Defendant's commission of a new crime sufficiently attenuated the later searches and seizure.

## I. BACKGROUND

On March 13, 2009, Dayton police officers Paul Saunders and Erik Steckel received information using the computer in their patrol car indicating that four black males inside a gray Oldsmobile, Ohio License number EKG–1121 had attempted to sell drugs to a person on Valley Street. The officers conducted a records check and discovered that the vehicle was registered to the Defendant Roger Mathews, Jr.

The officers then used the registration information to drive to the Defendant's listed home, where they observed the suspect vehicle in the driveway of the home. The officers parked the police car in a nearby parking lot, for the purposes of observing the activity surrounding the Defendant's car. During the observation, Defendant got into the car and drove away from the home. The officers followed Defendant as he drove south on Cincinnati Street. During this time, the officers observed that the rear license plate light was hanging from down from its mounting. Although the officers could read the plate while the taillight was turned off, the taillight while turned on would obscure part of the second and third letters of the license plate as it swung.

The officers continued to follow Mathews as he crossed Edwin C. Moses Boulevard and entered a McDonalds parking lot. Officer Saunders at this point activated the emergency lights on his marked police cruiser, and pulled forward, following Mathews. Mathews continued to drive around the McDonalds parking lot, drove over a curb in the north portion of the parking lot, and then sideswiped a 2004 Chevy Monte Carlo occupied by four teenagers.

After this collision, Mathews fled the vehicle and ignored the officers' demands to stop. When Mathews again failed to heed the warnings of the police officers, the officers pursued Mathews, tasing and subduing him. After placing Mathews in cuffs, the officers observed three packages of crack cocaine in and around a black knit cap that the Defendant had dropped while fleeing. Officer Steckel then read Mathews his *Miranda* rights. Mathews stated that he understood his rights, but was willing to speak to the officers without the presence of an attorney.

Sergeant Dan Mauch arrived shortly afterwards, and interviewed Mathews. Mathews agreed to sign a consent to search form for his bedroom at his mother's residence at 628 Miami Chapel Road, Dayton, Ohio. Officer Steckel patted Mathews down and discovered $1,260 in U.S. currency in the pocket of his pants.

Narcotics Detective Sergeant Mark Spiers, accompanied by Narcotics Detectives Dave House, Doug Hall, Pat Bell, Kevin Phillips, and Third District Officers, Sergeant Rick Blommel, and Officers Cash and Kleinhaus went to 628 Miami Chapel Road, Dayton, Ohio. Zelma Hopkins, the mother of Mathews, agreed to allow the detectives to search her home and signed a consent to search form.

During the search, Sergeant Blommel recovered a glass Pyrex dish that exhibited a visible residue inside. The officers used field testing to confirm the residue was the remnant from the production of crack cocaine. Detective Dave House discovered $4,593 inside a sock drawer in the basement of the house. Hopkins advised Sergeant Mark Spiers and Detective House that the money was her tax return,

and she had asked her daughter Renasha to hold on to it for her. The sergeant and detective asked Hopkins's 19–year–old daughter Renasha about the money, and Renasha denied that her mother had given her the money to hold.

Defendant Mathews was arrested on charges of possession of drugs, failure to comply with an order of a police officer, obstructing official business and criminal damaging/endangering. On April 16, 2009, a criminal complaint was filed against Mathews for violating 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A)(iii), possession with intent to distribute fifty grams or more of cocaine base.

On July 14, 2009, Mathews filed a Motion to Suppress, claiming that the evidence obtained was the product of an illegal search and seizure in violation of his Fourth Amendment rights. On April 2, 2010, this Court held a hearing on the matter of Defendant's Motion to Suppress.

## II. ANALYSIS

■ When analyzing whether a traffic stop violates the Fourth Amendment, a reviewing court must undertake "an objective assessment of an officer's actions in light of the facts and circumstances then known to him." *United States v. Ferguson*, 8 F.3d 385, 388 (6th Cir.1993) (quoting *Scott v. United States*, 436 U.S. 128, 137, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)). A police officer may stop a vehicle if the officer has a reasonable suspicion that a crime is or has been committed. *United States v. Hensley*, 469 U.S. 221, 226, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). The Supreme Court has described reasonable suspicion as "a particularized and objective basis" for suspecting that a person is involved in criminal activity. *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct.

690, 66 L.Ed.2d 621 (1981). Courts seldom deem an anonymous tip alone sufficient to create reasonable suspicion to justify an investigatory stop. *Florida v. J.L.*, 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).

■ An officer may also stop a vehicle if the officer has probable cause to believe that a traffic offense has occurred, even if the offense is minor and the stop is merely a pretext to investigate other crimes. See *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Ferguson*, 8 F.3d at 391. Probable cause exists where the facts and circumstances within an officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a reasonable person's belief that an offense has been or is being committed. *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Both probable cause and reasonable suspicion are not "finely-tuned standards" and are "not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Rather, these "fluid concepts ... take their substantive content from the particular contexts in which [they] are being assessed." *Ornelas*, 517 U.S. at 696, 116 S.Ct. 1657.

■ All evidence recovered as a result of an illegal search is "fruit of the poisonous tree" and the United States may not use the tainted evidence in prosecution of the alleged crime. *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Under some circumstances it is unreasonable to infer that a defendant's after-the-fact waiver of rights is sufficiently an act of free will to purge the primary taint of an unlawful invasion. *Id.* at 486, 83 S.Ct. 407.

However, the "fruit of the poisonous tree" doctrine does not protect a defendant who has committed a crime during an unconstitutional search. *United States v. Tab*, 259 Fed.Appx. 684, 689 (6th Cir.2007) (citing *Feathers v. Aey*, 319 F.3d 843, 852 n. 2 (6th Cir.2003)). If a suspect's response to an illegal stop is itself a new, distinct crime, then the arrest and search stemming from that new crime are sufficiently attenuated from the initial stop. See *Tab*, 259 Fed.Appx. at 690; *United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir.1982). This attenuation applies even if the new crime is in response to and was caused by the initial "police misconduct." *Bailey*, 691 F.2d at 1017–18; See also *United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir.1995) (holding that "a defendant's response to even an invalid arrest or *Terry* [*v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] stop may constitute independent grounds for arrest"); *United States v. Antone*, 225 F.3d 664 (9th Cir.2000) (holding that although police officer's stop was unlawful, evidence obtained was nevertheless admissible because "any taint dissipated once [the defendant] fled into the desert .... [the defendant's] flight severed any causal connection between the stop and Officer Garcia's search of the abandoned car.").

Defendant asserts that the instant case involves an unjustified investigatory stop, and that all evidence obtained as a result thereof are "fruits of the poisonous tree." Defendant argues that because the police officer relied upon Ohio Revised Code § 4503.21 that makes it a traffic violation to fail to display a license plate in plain view, or obstruct it by covering it with material, there was no justification in stopping Defendant. The officer testified that he could see the license plate clearly while the taillight was inactive, and that even while it was active, it only partially obscured parts of the plate while it swung. The officer was still able to read the plate and all relevant information on the plate. At worst, one would have to glance at the plate for a few seconds rather than one second to read the plate. This is not analogous to "material" obstructing the ability of law enforcement to read the plate that Ohio Revised Code § 4503.21 envisions.

The purpose of Ohio Revised Code § 4503.21 is to allow law enforcement to read the license plate, and to forbid attempts to obstruct this ability. *State v. Durfee*, 1998 Ohio App. LEXIS 86. True obstruction did not occur in this instance; the officers could read the plate. Equating *any* increased amount of difficulty to see part of the plate with the inability to read the plate at all would make it a traffic offense simply to have a license plate that is not spotless or is in any way less than in perfect reading condition, rather than simply a condition upon the license plate of a minimum standard of legibility. There must, therefore, be a metric used to determine when an obstruction to an officer's view leads to the harm envisioned by the license plate requirement. A reasonable interpretation is that we can infer this standard from the difficulty imposed upon law enforcement officials when they attempt to determine the informational content on the license plate. *State v. Brooks*, 2007 Ohio App. LEXIS 302 (finding an illegal stop and allowing a motion to suppress evidence obtained from a defendant whom officers stopped for having an obstructed license plate under Ohio Revised Code § 4503.21, where approximately seventy-five percent of the license plate markings remained visible).

Without any other basis to conduct the stop, other than the anonymous tip that does not sufficiently create probable cause or reasonable suspicion, Defendant is correct in asserting that the initial reason for

stopping was an impermissible stop under the Fourth Amendment.

 However, before the police obtained evidence from the illegal stop, other events, new distinct crimes, intervened. At the hearing, the government adduced uncontested evidence that the defendant attempted to flee and wrecked into another vehicle during his flight. This renders the instant case akin to *Sprinkle*, where the evidence obtained was not as a result of the initial stop, but instead a result of the intervening events and new, distinct crimes committed by Defendant after the officers engaged the emergency lights. Like *Sprinkle*, the police illegally stopped Defendant. Also like *Sprinkle*, before police obtained any relevant evidence, Defendant engaged in completely new and causally unrelated crimes. If Defendant had merely yielded to police, the legal circumstances of this case would be as Defendant claims. However, when Defendant began to drive recklessly, struck a vehicle, and then fled the scene of an accident, he created an entirely new, chain of criminal acts. The evidence obtained after that and the consent to obtain further evidence was received because of the second cited criminal acts, creating a buffer between the attempted unreasonable detention of the traffic stop with a very reasonable criminal investigation resulting from the hit and run.

The facts addressed by the Ninth Circuit in *Antone*, where the taint of the illegal stop did not extend to the collected evidence, because the intervening crime of fleeing severed the causal link between the illegality of the stop and the collection of evidence, are factually and legally identical to the current case. The Sixth Circuit in *Castillo* relied in part upon the *Antone* decision, making no statements that would cast doubt on the Sixth Circuit's acceptance of the principle of attenuation in cases where the defendant has committed a new crime that breaks the chain of causation between improper police action and collected evidence. *United States v. Castillo*, 2000 WL 1800481, 2000 U.S.App. LEXIS 30248 (6th Cir. Nov. 28, 2000).

## III. Conclusion

Although reasonable suspicion or probable cause did not support the initial traffic stop, because the officers gathered the evidence after Defendant's flight and car collision, the new crimes have severed any causal connection between the impermissible stop and the obtained evidence for the purposes of applying the exclusionary rule, Defendant's Motion to Suppress, (doc. 13.), is **DENIED**.