[Cite as *State v. Brand*, 2016-Ohio-7456.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-150590 |
| | | TRIAL NO. B-1402577A |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| BARON BRAND, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  October 26, 2016

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman*, Chief Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Law Office of Wendy R. Calaway, Co., LPA,* and *Wendy R. Calaway*, for Defendant-Appellant.

SYLVIA S. HENDON, **Presiding Judge.**

{¶1}   In this appeal, defendant-appellant Baron Brand challenges his convictions for aggravated murder, felonious assault with accompanying specifications, aggravated robbery, and two counts of having a weapon while under a disability.

{¶2}   He argues that his convictions were not based on sufficient evidence and were against the manifest weight of the evidence; that the trial court improperly admitted other-acts evidence; that the trial court erred in reading back to the jury portions of testimony from a witness for the state; that the prosecutor engaged in misconduct that deprived Brand of a fair trial; that he had received ineffective assistance from his trial counsel; and that the trial court erred in denying his motion to suppress.

{¶3}   For the following reasons, the judgment of the trial court is affirmed.

### *Factual Background*

{¶4}   On May 3, 2014, Keelin Broach and Beyoncia Willis had been staying at the apartment of Broach's cousin, Courtney McKinney.  At approximately 1 a.m., two men forced their way into McKinney's apartment at gunpoint to rob Broach.  The men murdered Broach and Willis, but McKinney was able to escape, despite having been shot.  McKinney later identified the two men from photographic lineups as Baron Brand and Devin Isome.

{¶5}   For his role in these crimes, the state issued an indictment charging Brand with two counts of aggravated murder, two counts of murder, two counts of felonious assault, two counts of aggravated robbery, and two counts of having a

weapon while under a disability. With the exception of the two counts of having a weapon while under a disability, all counts carried accompanying weapon specifications and a repeat-violent-offender specification.[1]

{¶6} Prior to trial, Brand filed a motion to suppress McKinney's eyewitness identification. The trial court overruled Brand's motion. The case proceeded to a jury trial, where the following evidence was introduced.

{¶7} On the evening of May 2, 2014, Courtney McKinney had been at her apartment with Broach and Willis. Broach was a known drug dealer and had brought drugs to McKinney's apartment. McKinney left Broach and Willis at her apartment while she went out with a friend to several bars. Upon returning home in the early hours of May 3, McKinney entered the interior lobby of her apartment building. As she began to walk up the stairs to her second-floor unit, she noticed someone, whom she later identified as Devin Isome, at the top of the stairs. Isome pulled out a gun and stated "Where the money at?" She told him that she only had $50 and a credit card, to which Isome responded, "Bitch, I don't want no $50 or no credit card." He then indicated towards her apartment and asked, "Who in here?" Isome was wearing a black hoodie and jeans. The hoodie was tied under his chin, but McKinney had no problem seeing his face.

{¶8} McKinney attempted to run back outside, but a second person, later identified by McKinney as Brand, approached her from the basement as she was on the second step. Brand had on a white hoodie, also tied under his chin. He stated, "Nah, we going up in here," and he put a gun to her back as he walked her up the

---

[1] The indictment also charged Brand with trafficking in heroin, possession of heroin, and two additional counts of having a weapon while under a disability. Brand separately pled guilty to those offenses, and was convicted and sentenced by the trial court. He has not challenged his convictions for those offenses in this appeal.

stairs. Isome put his gun to her head as she unlocked her apartment door. The lights were on in McKinney's apartment, and Broach and Willis were lying on a couch. Brand and Isome ordered McKinney onto a couch and Broach onto the ground, and they repeatedly demanded money. Broach told them that he did not have money, but that they could have his dope that was on the table. Brand took items off the table and tied Broach's hands behind his back with the jogging pants that Broach had been wearing. Brand then placed a phone call over speakerphone and told the person whom he had called, "It aint no money." McKinney heard the other person respond, "Kill them," and she immediately ran into her bedroom and jumped out the window. She heard a gunshot as she was jumping, and she realized that she had been shot in the arm once she hit the ground. McKinney heard two more gunshots as she ran to the nearest house with lights on.

{¶9} A resident of the house to which McKinney had fled called the police, and McKinney was taken to a hospital. Cincinnati Police Officer Thomas Stanton had been one of the responding officers, and he had followed a blood trail leading to the side of McKinney's apartment building. He saw that the blood trail had originated from a broken second-story window. Officer Stanton secured the apartment building. The front door to McKinney's apartment was slightly ajar, but Officer Stanton had to force it open because a body had been obstructing it. Upon entering, Officer Stanton immediately saw two deceased victims. Both Broach and Willis had been shot in the head and had died from the resulting injuries.

{¶10} Criminalist Kathy Newsome processed the crime scene in McKinney's apartment. She found drug paraphernalia, specifically a baggie of marijuana, a scale, and a box of plastic bags. She also found several pieces of copper jacketing and shell

4

casings. Criminalist Newsome identified the ammunition as Dynamic Research Technologies ("DRT"), a brand she had never before encountered. Kevin Lattyak, a firearms supervisor with the Hamilton County Coroner's Officer, examined the casings that had been collected. In Lattyak's opinion, the casings had been fired from a semi-automatic handgun, specifically a Bersa.

{¶11} Detectives Jake Wloszek and Colin Vaughn interviewed McKinney at the hospital around 6:30 a.m. on May 3, 2014. Although McKinney's medical records indicated that she had been intoxicated, McKinney stated that she had only consumed two alcoholic beverages and had not been drunk. Detective Vaughn noticed that McKinney was very upset, but did not seem intoxicated. McKinney told the detectives that the first suspect that she had encountered was a male black, approximately 5'8", and 21-22 years of age. She described the second suspect as a light-skinned black male, shorter than the first suspect, and as having been 20-28 years old.

{¶12} Detective Vaughn again interviewed McKinney on May 9, 2014. In this interview, McKinney described the first suspect as a male black that was 5'6" or taller. She described the second suspect as again being shorter than the first, approximately 5'3", stocky with a yellow complexion, and around 22-23 years old. Testimony revealed that Isome was actually 6'4" and was several inches taller than Brand.

{¶13} Detective Vaughn had developed Brand as a suspect following Brand's arrest on unrelated charges, and he prepared a photographic lineup containing a picture of Brand for McKinney to examine. Vaughn was aware of the discrepancies between Brand's height and the heights contained in McKinney's various

descriptions when he made the lineup, but he believed that McKinney's ability to accurately judge height had been affected because she had been looking down on Brand from the stairwell when she first saw him. Detective Terry McGuffey served as blind administrator and showed McKinney the photographic lineup. Upon seeing photograph number three, McKinney began to cry and stated, "That's him. That's that motherfucker right there. I'm a thousand percent that that's him." Brand was the subject of photograph number three. Upon seeing photograph number six, McKinney responded that the picture "looks similar to the tall one. I'm iffy about him." Detective Vaughn did not construe McKinney's statements to be an identification of the person in photograph number six as one of the suspects, so he conducted no follow-up investigation of that person.

{¶14} McKinney developed Isome as a suspect through her own investigation, and she showed Detective Vaughn a picture of Isome obtained from Facebook. On May 12, 2014, Detective Vaughn had a blind administrator show McKinney two additional photographic lineups. McKinney identified no persons in the first lineup. But in the second lineup that she was shown, McKinney identified Isome as the first suspect that she had encountered.

{¶15} Christopher Hill testified at trial that he had been incarcerated on various charges at the same time that Brand had been incarcerated for the offenses in this case. Hill and Brand had a conversation in jail about their respective cases. Brand told Hill that a woman named Courtney had arranged with him to set up Broach for a robbery. According to Brand, he had followed Courtney home from a club with the intention of taking Broach's money and heroin. Brand further told Hill that mayhem had ensued, and that he had shot at Courtney, who had fled by jumping

out a window. Before he left with a couple ounces of heroin and a couple thousand dollars, Brand shot Broach and another woman to eliminate any witnesses.

{¶16} Evidence was further presented to the jury that Brand had been arrested on unrelated offenses on May 8, 2014. As part of that arrest, a search warrant was executed at Brand's residence at 5460 Beechmont Avenue. When executing the warrant, officers discovered a large amount of heroin, approximately $1,900, a .380 Bersa handgun, and a box of DRT .380 cartridges. Detective Vaughn testified that he had never seen a DRT head stamp on a cartridge case prior to this case, and that Brand had admitted that the DRT ammunition, the weapon, and the heroin found at the Beechmont residence belonged to him.

{¶17} Over Brand's objection, the state presented testimony from Laurie Bellow, a retired detective from the Forest Park police department. Bellow testified that in 2010, she had been dispatched to the scene of a robbery. In that case, money, a cell phone, and marijuana had been stolen from an individual known to sell drugs, and the victim had been shot during the robbery. Bellow explained that she had developed Brand as a suspect in that case, and that he had ultimately been convicted of the resulting charges.

{¶18} Brand presented testimony from Melissa Berry, an expert in the psychology associated with eyewitness identification. Although Berry could not state with certainly that McKinney's eyewitness identification had been inaccurate, she explained that there were many factors present in this case that could have had an impact on the identification. She testified that McKinney's attention was divided between two suspects; that both suspects had their faces somewhat obscured by a hood; that witnesses often focus on the presence of a weapon rather than focus on

other features of a suspect; and that severe stress can impair a person's memory, causing the person to imbed information learned post-event into their memory of the actual event. She further explained that both intoxication and exposure time can affect an identification.

{¶19} The jury returned verdicts finding Brand guilty of all offenses and specifications, and the trial court separately found Brand to be a repeat-violent offender. Various offenses merged for purposes of sentencing, and the trial court issued an entry convicting Brand of, and imposing sentence on, the following offenses: two counts of aggravated murder, felonious assault with accompanying weapon and repeat-violent-offender specifications, aggravated robbery, and two counts of having a weapon while under a disability.

### Sufficiency and Weight

{¶20} In his first assignment of error, Brand argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶21} When reviewing the sufficiency of the evidence, this court must determine whether, after viewing all probative evidence and reasonable inferences in the light most favorable to the prosecution, a rational trier of fact could have found all the elements of the offenses proven beyond a reasonable doubt. *See State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In contrast, when reviewing the manifest weight of the evidence, we must weigh the evidence and consider the credibility of the witnesses to determine whether the jury lost its way and committed such a manifest miscarriage of justice that Brand's convictions must be reversed. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

8

{¶22} Brand was convicted of two counts of aggravated murder, aggravated robbery, felonious assault, and having a weapon while under a disability. He advances two specific arguments in support of this assignment of error. First, he challenges McKinney's identification and contends that there was insufficient evidence to prove that he was involved in these crimes.

{¶23} Extensive evidence was presented regarding McKinney's identification of Brand. Although Brand had a hood tied around his face during the commission of these offenses, McKinney testified that his face had not been obscured and that she had been able to clearly view his facial features. Evidence further demonstrated that McKinney had time to see Brand both in the lobby and stairwell of her apartment building, and in her apartment, and that both areas were well lit. Further, while evidence was presented regarding the discrepancies in McKinney's description of Brand, particularly with respect to his height, the jury was also presented with testimony that McKinney's observations could have been affected by the fact that she had first encountered Brand while she stood a few steps above him.

{¶24} Defense counsel vigorously cross-examined McKinney and highlighted the discrepancies in her identification, but the state presented additional evidence at trial supporting her identification of Brand as the perpetrator of these offenses. The jury heard evidence that DRT was not a common brand of ammunition, but that it had been used in the commission of these offenses, that it had been found in Brand's apartment, and that Brand had admitted ownership of the ammunition found in his apartment. The jury was additionally presented with testimony from Christopher Hill that Brand had admitted his role in these offenses, as well as described in significant detail to Hill what had occurred. The jury was in the best position to view

the credibility of these witnesses, and we will not second guess its determination that McKinney's identification of Brand was credible.

{¶25} Brand further argues that the record contains no evidence that anything had been taken from McKinney's apartment when Broach and Willis were killed. The record belies this contention. McKinney testified that she saw Brand grab items off of a table in her apartment. And Christopher Hill testified that Brand had told him that he had taken both heroin and money from McKinney's apartment.

{¶26} We find that Brand's convictions were supported by both the sufficiency and the weight of the evidence. The first assignment of error is overruled.

### *Other-Acts Evidence*

{¶27} In his second assignment of error, Brand argues that he was deprived of his right to a fair trial when the trial court erred by admitting other-acts evidence from retired detective Laurie Bellow, who testified that Brand had previously been involved in the robbery and shooting of a known drug dealer in 2010. We review the trial court's admission of evidence for an abuse of discretion. *See State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 43.

{¶28} Generally, under Evid.R. 404(A), evidence of a person's character is not admissible to prove action in conformity therewith. However, under Evid.R 404(B), evidence of other crimes may be admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Here, the state had sought to admit evidence of Brand's prior crime to establish his identity as the perpetrator of the instant offense.

{¶29} Other-acts evidence may be used to prove identity when the evidence establishes a defendant's modus operandi, or behavioral fingerprint. *State v. Lowe*,

69 Ohio St.3d 527, 531, 634 N.E.2d 616 (1994). When used for this purpose, the other-acts evidence proves the defendant's identity by demonstrating that the defendant "has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense." *Id.*, quoting *State v. Smith*, 49 Ohio St.3d 137, 141, 551 N.E.2d 190 (1990). The other acts need not be identical to the crime in question, but they must "be related to and share common features." *Id.*

{¶30} The other-acts evidence introduced in this case established that Brand had been convicted of charges related to his role in the shooting and robbery of a known drug dealer in 2010. Other than the fact that both Brand's prior crime and the instant offense involved the robbery of a known drug dealer, the offenses shared little in common. While the victim of the prior offense was shot, the victims in the instant case were executed to prevent them from becoming witnesses to the crime. The robbery of a drug dealer is not an uncommon crime. Brand's involvement in two such crimes, with the absence of any other common features linking the offenses, did not establish a unique scheme or plan identifiable only to him. We hold that the trial court abused its discretion in admitting the other-acts evidence.

{¶31} However, in light of the other evidence of Brand's guilt, as described in our resolution of the first assignment of error, the admission of this evidence did not result in prejudicial error or affect the outcome of the case. *See State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 127. Brand was not deprived of his right to a fair trial. The second assignment of error is overruled.

***Read Back of Testimony During Deliberations***

{¶32}   In his third assignment of error, Brand argues that the trial court erred in permitting a read back of portions of testimony from the state's witness Courtney McKinney during deliberations.  Brand argues on appeal that this read back allowed the jury to consider McKinney's testimony out of context and to give undue emphasis to her testimony over that offered by other witnesses.

{¶33}   Upon request, a trial court is permitted to read back all or a portion of any witness' testimony to the jury after deliberations have begun.  *State v. Black*, 85 Ohio App.3d 771, 780, 621 N.E.2d 484 (1st Dist.1993).   We review a trial court's decision to read back testimony to the jury for an abuse of discretion.  *State v. McCrary*, 1st Dist. Hamilton No. C-080860, 2009-Ohio-4390, ¶ 32.

{¶34}   During deliberations, the jury submitted a question to the trial court asking when and what Courtney McKinney had said about Brand each time she gave her description.   Over Brand's objection, the trial court elected to read back to the jury portions of McKinney's testimony pertaining to her description and identification of Brand.   We hold that the trial court did not abuse its discretion in reading back this testimony.   Identification of Brand was a crucial issue in the case. *See id.*   And Brand's concerns that the read back of McKinney's testimony placed undue emphasis on the testimony and encouraged the jury to favor it over testimony from other witnesses are without merit.   The trial court instructed the jury that it was still to consider all the evidence in the case, as well as the court's instruction on the law.   And as the Ohio Supreme Court has noted, " The jury's recollection of the witness cannot be assumed to have so diminished as to give the reading of the

testimony credibility that was not present when it was originally given." *State v. Berry*, 25 Ohio St.2d 255, 263, 267 N.E.2d 775 (1971).

{¶35} The third assignment of error is overruled.

### *Prosecutorial Misconduct*

{¶36} In his fourth assignment of error, Brand argues that he was deprived of a fair trial due to misconduct committed by the prosecutor.

{¶37} Brand first argues that the prosecutor made multiple improper comments during closing arguments. To have deprived a defendant of a fair trial, a prosecutor's remarks must have been improper and have prejudicially affected the defendant's substantial rights. *State v. Smith*, 130 Ohio App.3d 360, 366, 720 N.E.2d 149 (1st Dist.1998). The prosecutor is generally entitled to a wide degree of latitude during closing argument. *State v. Smith*, 14 Ohio St.3d 13, 470 N.E.2d 883 (1984). The prosecutor's statements must not be viewed in isolation, but in light of the entire closing argument. *State v. Kelly*, 1st Dist. Hamilton No. C-010639, 2002-Ohio-6246, ¶ 22.

{¶38} We have reviewed each remark made by the prosecutor during closing argument that Brand has cited. Brand failed to object to any of these comments, and consequently has forfeited all but plain error. *Id.* We find that a majority of the remarks cited by Brand were not improper. And to the extent that any remark could be considered improper, it certainly did not amount to plain error affecting the outcome of the proceedings.

{¶39} Brand next argues that the prosecutor elicited improper hearsay testimony from McKinney when she testified that she had heard someone on speakerphone tell Brand to "kill them." But because this testimony was used not to

prove the truth of the matter asserted, but to explain why McKinney jumped out of a window, it was not improper. The prosecutor also mentioned this telephone call and instruction to "kill them" during closing argument, arguing that Brand had intended to kill Broach and Willis because he had been instructed to do so. But Brand failed to object to this comment, and it did not amount to plain error.

{¶40} Brand further contends that the prosecutor improperly elicited opinion testimony from Detective Vaughn in violation of Evid.R. 703. He argues that the prosecutor used Detective Vaughn as an expert witness on drug trafficking. We find the prosecutor's questioning of Detective Vaughn regarding drug terminology and value to be entirely proper. The detective was testifying based on his knowledge and experience as a police officer, and not as an expert witness. We further find no error in the additional testimony from Detective Vaughn cited by Brand. The testimony was based on Vaughn's investigation, observations, and knowledge and experience as an officer.

{¶41} We hold that Brand was not deprived of a fair trial due to prosecutorial misconduct, and we overrule the fourth assignment of error.

### Ineffective Assistance

{¶42} In his fifth assignment of error, Brand argues that he received ineffective assistance from his trial counsel. He contends that his counsel failed to object to numerous instances of hearsay and prosecutorial misconduct, but he provides no citation to the record of specific examples of ineffectiveness. Consequently, we disregard this assignment of error pursuant to App.R. 12(A)(2). *See State v. Rucker*, 1st Dist. Hamilton No. C-110082, 2012-Ohio-185, ¶ 32.

*Motion to Suppress*

{¶43} In his sixth assignment of error, Brand argues that the trial court erred in failing to grant his motion to suppress the eyewitness identification. He specifically contends that the photographic lineup shown to McKinney was unduly suggestive because the lineup photographs did not match the description of the perpetrator.

{¶44} Our review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact if they are supported by competent and credible evidence, but we review de novo the trial court's application of the law to the relevant facts. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶45} A two-part test is utilized to determine whether an eyewitness identification must be suppressed. *See State v. Neal*, 1st Dist. Hamilton No. C-140667, 2015-Ohio-4705, ¶ 28, citing *Perry v. New Hampshire*, 565 U.S. 228, 238-239, 132 S.Ct. 716, 181 L.Ed.2d 694 (2012). First, the reviewing court must determine whether the lineup procedure utilized was suggestive and unnecessary. *Id.* Second, if the lineup is found to be suggestive and unnecessary, the court must determine whether the identification was reliable under the totality of the circumstances. *Id.* If the lineup is not found to be suggestive and unnecessary, a court should not move on to the second step of the analysis. *Id.* at ¶ 29.

{¶46} The lineup shown to McKinney was not unduly suggestive. The photographs used in the lineup did not contain height markers. So at the time that the identification was made, McKinney was unaware that she was identifying a suspect that was taller than the height description that she had provided. Further,

the lineup was created by Detective Vaughn using Ohio Law Enforcement Gateway, a computer system that pulls photographs from various sources, including the Bureau of Motor Vehicles. The photographs were shown to McKinney individually in sequential order by a blind administrator, who had been completely unaware of any suspect or person contained within the lineup.

{¶47} Because the lineup was not unduly suggestive, we need not determine whether McKinney's identification was reliable under the totality of the circumstances. The trial court did not err in failing to grant Brand's motion to suppress.

{¶48} The sixth assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**CUNNINGHAM** and **STAUTBERG, JJ.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.