[Cite as *State v. Morgan*, 2017-Ohio-7489.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160495 |
|  |  | TRIAL NOS. B-1405991 |
| Plaintiff-Appellee, | : | B-1506927 |
|  |  |  |
| vs. | : | *O P I N I O N.* |
|  |  |  |
| MELISSA MORGAN, | : |  |
|  |  |  |
| Defendant-Appellant. | : |  |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 8, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michael J. Trapp*, for Defendant-Appellant.

**MYERS, Judge.**

{¶1} Defendant-appellant Melissa Morgan has appealed the judgment of the trial court convicting her, following a jury trial, of the murder of Maurice Mundy. Morgan raises six assignments of error for our review. Finding no merit to her arguments, we affirm the trial court's judgment.

### *Facts and Procedure*

{¶2} Mundy was Morgan's drug dealer. On October 20, 2014, Morgan bought drugs from Mundy and spent the night at his house. The following morning, after Morgan had left, Mundy discovered that he was missing approximately $250. Mundy believed that Morgan had taken his money, and he spent much of the day driving around with Amanda Powers looking for Morgan at various locations, including her grandmother's home. Through Morgan's friend Christine Gregory, Mundy was able to set up a meeting with Morgan at Hunter Park in Norwood that afternoon.

{¶3} Morgan and Gregory were already at Hunter Park when Mundy arrived with Powers. Morgan and Mundy immediately confronted each other. During their argument, Mundy hit Morgan in the face, and Morgan then stabbed Mundy in the neck with a knife.

{¶4} This confrontation was witnessed by numerous people. These witnesses collectively heard Mundy demand his money and heard Morgan deny having taken it. They witnessed Mundy hit Morgan, heard Morgan threaten to stab Mundy, and then saw her actually stab him.

{¶5} Morgan was initially indicted for the offense of felonious assault. But after Mundy died from his injuries approximately one year later, Morgan was indicted for the offense of murder under R.C. 2903.02(B).

{¶6} Her case proceeded to a jury trial, where Morgan argued that she had stabbed Mundy in self-defense. The jury rejected Morgan's claim of self-defense and found her guilty of murder. The trial court sentenced Morgan to a term of 15 years to life imprisonment.

### *Character Evidence*

{¶7} In her first assignment of error, Morgan argues that the trial court erred by admitting character evidence of her propensity for violence.

{¶8} We review the trial court's admission of evidence for an abuse of discretion. *State v. Brand*, 1st Dist. Hamilton No. C-150590, 2016-Ohio-7456, ¶ 27, citing *State v. Noling,* 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 43. An abuse of discretion "connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." *Pembaur v. Leis*, 1 Ohio St.3d 89, 91, 437 N.E.2d 1199 (1982).

{¶9} Pursuant to Evid.R. 404(A), character evidence is generally not admissible to prove action in conformity therewith. But, "[e]vidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same is admissible." Evid.R. 404(A)(1). When a defendant presents evidence of a specific character trait, the door is opened for the prosecution to rebut that evidence. *State v. Garcia*, 8th Dist. Cuyahoga No. 102546, 2016-Ohio-585, ¶ 68; *State v. Mitchell*, 1st Dist. Hamilton Nos. C-050416 and C-050417, 2006-Ohio-5073, ¶ 73.

{¶10} The prosecutor began her cross-examination of Morgan by asking Morgan, "What about the fights that you have had throughout your life?" Defense counsel immediately raised an objection that was overruled by the trial court. Referring to discussions that must have taken place off the record, the trial court stated that the parties had talked about this issue a number of times, and it instructed the prosecutor to ask her questions in accordance with the prior rulings that the court had made.

{¶11} The prosecutor then asked Morgan the following questions, to which defense counsel raised a continuing objection: "What about your fight with Ms. Cline, when you hit her in the head with a bottle?"; "What about Mr. Warren, when you struck Mr. Warren over the head with a bottle?"; "What about in the jail when you hit Ms. Matthews because you said she was snitching?"; "Do you recall in one of your jail calls, you told one of your friends that you had hit an individual because they were snitching on everybody in your pod?"; "And when you talked to your mother, you actually told her the fight was because she had spit on you[,] isn't that correct?"; and "Isn't it true [in] the past you filmed other fights you had?"

{¶12} After this last question, defense counsel again objected and moved for a mistrial. At a side-bar conference, defense counsel argued that the prosecutor's questions were improper because Morgan had not testified as to her character on direct. The trial court responded, "I disagree 100% percent." In support of its decision to allow these questions, the court stated, "I do believe at this point she never mentioned the word peaceful. Her testimony about the jaw, about her acting tough but being weak all these other things, to me, certainly culminated in her

presentation being a character of a peaceful nature who never wanted to fight. When I heard those things I thought, in my opinion, the door has been opened."

{¶13} Following our review of the record, we cannot find that the trial court abused its discretion by admitting this character evidence and allowing the prosecutor to question Morgan about prior physical confrontations with others. On direct examination, Morgan had testified several times that she had wanted to resolve her conflict with Mundy like adults, as calmly as possible, without any drama or problems. She explained that she wanted them to talk through their issues and "find another solution than violence."

{¶14} Morgan additionally stated several times that she was a weak person who attempted to project that she was tough. She specifically testified that, "I tried to, like, yell and cuss and, you know, I didn't want him to see that I was weak. I was weak. I still am. * * * I have grown up like that, like a Crip in Norwood. You have to act like you are tough." She further testified, "I do tend to put on this façade when I talk to people where I am from, I try to sound like I am not affected * * *. I don't like people to see me as the weak person that I am. I try to cover it up by acting like I am tough."

{¶15} The trial court correctly recognized that Morgan had not specifically testified that she was a peaceful person. But through Morgan's testimony that she wanted to find a nonviolent resolution to the conflict and that she was a weak person who projected a tough persona, she conveyed to the jury that she was, in fact, a peaceful person who preferred to resolve conflicts in a peaceful manner. The prosecution was entitled to rebut that implication by introducing evidence that Morgan had previously resolved conflicts with violence. *See* Evid.R. 404(A)(1).

{¶16} The trial court did not abuse its discretion in admitting this character evidence. The first assignment of error is overruled.

{¶17} In her second assignment of error, Morgan argues that the trial court erred in denying her motion for a mistrial. We review the trial court's denial of a motion for a mistrial for an abuse of discretion. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 198.

{¶18} Defense counsel moved for a mistrial during the prosecutor's cross-examination of Morgan, after she was repeatedly questioned about specific instances of her conduct involving physical confrontations with others. But because we have determined that this evidence was admissible under Evid.R. 404(A)(1), we cannot find that the trial court abused its discretion by failing to grant a mistrial after the evidence was introduced. The second assignment of error is overruled.

### Jail Telephone Calls

{¶19} In her third assignment of error, Morgan argues that the trial court erred in admitting jail telephone calls that were irrelevant and unfairly prejudicial. We review the trial court's admission of these calls for an abuse of discretion. *Brand*, 1st Dist. Hamilton No. C-150590, 2016-Ohio-7456, at ¶ 27.

{¶20} During its case-in-chief, the state introduced over Morgan's objection recordings of various telephone calls that Morgan had made while incarcerated in the Hamilton County Justice Center. On appeal, Morgan contends that the calls should have been excluded under Evid.R. 402 because they were irrelevant, and that, if relevant, the calls should have been excluded under Evid.R. 403(A) because any probative value from the calls was substantially outweighed by the danger of unfair prejudice.

{¶21} We have reviewed the particular calls and specific statements contained therein challenged by Morgan. A majority of the challenged statements were relevant, and their probative value was not outweighed by any danger of unfair prejudice. *See* Evid.R. 403(A). With respect to the few irrelevant statements contained in the calls, we find that they resulted in no prejudice to Morgan. *See State v. Issa,* 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001).

{¶22} Morgan's third assignment of error is overruled.

### Exclusion of Video Evidence

{¶23} In her fourth assignment of error, Morgan argues that the trial court erred by excluding video evidence of her physical condition and demeanor immediately after her arrest. We review the trial court's exclusion of the video evidence for an abuse of discretion. *Brand*, 1st Dist. Hamilton No. C-150590, 2016-Ohio-7456, at ¶ 27.

{¶24} Morgan requested to play for the jury part of a videotaped interview of her that had been conducted immediately after her arrest. She sought to play the video without sound for the purpose of illustrating her agitation at the time, as well as to show the jury how much less she had weighed at the time of the offense than at trial. The trial court sustained the state's objection to Morgan's request. It determined that Morgan's nonverbal conduct on the video was a statement pursuant to Evid.R. 801(A), and that to allow her to play the video would impermissibly allow her to admit her own statement in violation of Evid.R. 801(D)(2). Nevertheless, the trial court ruled that Morgan could show the jury a still photograph from the video.

{¶25} A party may not introduce her own statement under Evid.R. 801(D)(2)(a). *State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, 824

N.E.2d 504, ¶ 105. So if Morgan's conduct on the video was a statement, it was inadmissible hearsay under Evid.R. 801(D)(2)(a) because Morgan, and not the state, sought to admit the video.

{¶26} Evid.R. 801(A) defines a statement as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." This latter category would include such nonverbal assertions as a nod, a "thumbs up," or a gesture intending to convey a particular sentiment. After reviewing the video, we cannot say that Morgan's nonverbal conduct was an assertion or intended as an assertion. The video simply depicted her then demeanor and physical appearance. She was not asserting anything by her conduct.

{¶27} While the trial court erred as a matter of law in determining that Morgan's nonverbal conduct was a statement, we find that the error was not prejudicial. Although Morgan failed to do so, the trial court had permitted her to show the jury a still photograph of her appearance from the video. This photograph would have illustrated the weight that she had gained since the time of the offense. Further, when cross-examining the detective who had interviewed Morgan, defense counsel questioned the detective about Morgan's demeanor at the time of the interview. The detective testified that Morgan had been very emotional, and that she had been remarkably thinner at the time of the offense.

{¶28} Morgan was able to convey to the jury, via other channels, the information that she had sought to introduce through the video. Because Morgan was not prejudiced by the trial court's exclusion of the video evidence, we overrule the fourth assignment of error.

### *911 Call*

{¶29}  In her fifth assignment of error, Morgan argues that the trial court erred in allowing the state to replay a 911 call during closing argument.

{¶30}  Amanda Powers testified that she called 911 after Morgan stabbed Mundy in the park, and the recording of her 911 call was played for the jury during her testimony.  In the rebuttal portion of closing argument, the prosecutor again played the 911 call for the jury over defense counsel's objection.  Morgan contends on appeal that playing the 911 call a second time was needlessly inflammatory.

{¶31}  Because the 911 call had been previously admitted into evidence, it was entirely proper for the prosecutor to play it during closing argument.  *See State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 197 (holding that it was not improper for the prosecutor to display to the jury during closing argument a photograph that had been admitted into evidence).

{¶32}  The fifth assignment of error is overruled.

### *Manifest Weight*

{¶33}  In her sixth assignment of error, Morgan argues that her conviction for murder was against the manifest weight of the evidence.

{¶34}  When reviewing the manifest weight of the evidence, this court must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of the witnesses to determine whether, in resolving conflicts in the evidence, the trier of fact lost its way and committed such a manifest miscarriage of justice that the conviction must be reversed.  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶35} Morgan was found guilty of murder under R.C. 2903.02(B), which provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence * * *." The underlying offense of violence in this case was felonious assault. Morgan does not deny stabbing Mundy, but rather contends that she had acted in self-defense.

{¶36} Morgan had the burden of proving that she had acted in self-defense by a preponderance of the evidence. *State v. Bandy*, 1st Dist. Hamilton No. C-160402, 2017-Oho-5593, ¶ 56. Morgan was required to establish (1) that she was not at fault in creating the situation, (2) that she had a bona fide belief that she was in danger of death or great bodily harm, and that her only means of escaping that danger was through the use of similar force, and (3) that she did not violate any duty to retreat or avoid the danger. *Id.* With respect to the duty to retreat, "in most cases, 'a person may not kill in self-defense if he has available a reasonable means of retreat from the confrontation.' " *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997), quoting *State v. Williford*, 49 Ohio St.3d 247, 250, 551 N.E.2d 1279 (1990).

{¶37} The jury heard testimony from several witnesses regarding the confrontation between Morgan and Mundy. Tdera Gray witnessed the confrontation when he was walking home from school through Hunter Park. Gray first saw Mundy hit Morgan. He then heard Morgan tell Mundy that she would stab him just before he witnessed the actual stabbing. Rhonda Nelson-Noe also witnessed the confrontation while she was eating lunch in the park. Nelson-Noe saw Morgan jumping up and down prior to Mundy's arrival. She testified that she had seen Morgan and Mundy smacking each other, and that she had heard Morgan threaten to stab Mundy prior to actually stabbing him.

{¶38} Amanda Powers had also seen Morgan jumping up and down in the park and testified that she had told Mundy that Morgan looked like Muhammad Ali. Christine Gregory, who had gone to the park with Morgan, testified that she saw Mundy "going after" Morgan, trying to punch her and grab her neck. Gregory then heard Morgan tell Mundy, "don't come near me, I have a knife," just prior to seeing her stab him.

{¶39} Morgan testified on her own behalf, stating that she had agreed to meet Mundy at the park because she had wanted to handle the confrontation like adults. But because Mundy was such a big man and she had seen him angry before, she took a knife with her to the park. Morgan explained that she had previously been hit in the face and suffered a broken jaw, and that she was terrified that she would suffer the same injury again. Morgan testified that Mundy had approached her in a rage. After he lunged at her, she pulled out the knife and told him not to touch her or that she would stab him. Mundy then punched her in the face, and she stabbed him in the neck with the knife. In response to the testimony from other witnesses that she had been jumping up and down, Morgan stated that she had done so because it had been a cold day.

{¶40} In light of the evidence presented, the jury could reasonably have found that Morgan had failed to prove by a preponderance of the evidence the elements of self-defense. Despite testifying that she wanted to resolve her conflict with Mundy peacefully, Morgan purposely took a deadly weapon with her to their meeting, and she responded to Mundy's punch with deadly force. The jury was in the best position to judge the credibility of the witnesses, and it was entitled to reject Morgan's testimony that she had acted in self-defense. *State v. DeHass*, 10 Ohio

St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. It was within the province of the jury to conclude that she failed to establish that she was not at fault in creating the situation and to disbelieve Morgan's explanation that she had been jumping up and down prior to Mundy's arrival because she was cold. The jury instead could have found that she was behaving in such a way to prepare herself for a fight because she had no intention of resolving the conflict peacefully.

{¶41} The jury also could have determined that Morgan had failed to prove by a preponderance of the evidence that she had not violated any duty to retreat or avoid the danger. The confrontation took place in a public park. Rather than leave the park after being hit by Mundy, Morgan stabbed Mundy in the neck.

{¶42} Morgan's conviction for murder was not against the manifest weight of the evidence. The sixth assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

ZAYAS, P.J., and DETERS, J., concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.