[Cite as *State v. Schnabel*, 2019-Ohio-3024.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No. WD-18-010

    Appellee                                 Trial Court No. 2017CR0140

v.

Richard J. Schnabel                        **DECISION AND JUDGMENT**

    Appellant                               Decided:  July 26, 2019

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, David T. Harold,
and Channa B. Beard, Assistant Prosecuting Attorneys, for appellee.

Brian A. Smith, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Defendant-appellant, Richard Schnabel, appeals the February 1, 2018

judgment of the Wood County Court of Common Pleas which, following a jury trial

convicting him of domestic violence, a third-degree felony, sentenced him to 18 months

of imprisonment.  For the reasons that follow, we affirm.

{¶ 2} On April 20, 2017, appellant was indicted on one count of felony domestic violence, R.C. 2919.25(A) and 2919.25(D)(4). The charge stemmed from an incident in the early morning of March 12, 2017, when appellant caused or attempted to cause physical harm to his wife while they were guests at a hotel located in Perrysburg Township, Wood County, Ohio. The indictment further alleged that appellant had pleaded guilty to or had been convicted of two prior domestic violence offenses. On November 14, 2017, following the state's motion, the indictment was amended to include an additional prior domestic violence conviction.

{¶ 3} The case proceeded to a jury trial on December 13, 2017. An investigator from the Jackson County, Michigan prosecutor's office testified regarding his attempts to serve the victim in the case with a subpoena to testify at the trial in the matter. The investigator stated that he handed the victim the subpoena and she indicated that she would not appear. The investigator also testified as to the dates of appellant's prior Jackson County domestic violence convictions.

{¶ 4} Two Perrysburg Township officers testified that they responded to a domestic violence in progress in a hotel room at the Holiday Inn French Quarter. Approaching the reported room number, they observed appellant right outside the door; he appeared highly intoxicated.

{¶ 5} Officer Scott Mezinger entered the room to speak with the victim. At the time, she was still on the telephone with the 911 operator. Mezinger stated that she was very upset, shaking and crying. Officer Mezinger testified that there was a young male in

2.

the room determined to be the parties' child and that their daughter had locked herself in the bathroom to get away from the altercation. He and the victim were able to get the child out of the bathroom. Officer Mezinger stated that both children were crying and very upset.

{¶ 6} Officer Mezinger testified that the victim was "highly agitated" and that she informed him that she and appellant were arguing and that he threw her down on the ground by her hair; he observed that some of her hair was pulled out. She complained that her neck was injured.

{¶ 7} Officer Jeffrey Slusher testified that when he observed appellant in the hallway he ordered him to stop; after several commends appellant finally acquiesced. Appellant, visibly intoxicated, stated that he and the victim had been arguing all evening. Officer Slusher's testimony of the victim's version of the events mirrored Officer Mezinger's.

{¶ 8} Over objection, the 911 operator testified and the 911 call made by the victim was played for the jury and admitted into evidence. Two recorded jail calls, initiated by appellant and involving the victim, were also played for the jury over objection. The calls mainly consisted of appellant's attempts to secure the funds to get out of jail. Initially, the victim was supportive in his attempts but became increasingly agitated when appellant, confronted with the victim's allegations, refused to admit to the incident. Appellant repeatedly indicated that he could not addresses the charges because

3.

the telephone call was being recorded. After much discussion, the victim seemingly understood.

{¶ 9} Following the close of the evidence and jury deliberations, the jury found appellant guilty of felony domestic violence. The appeal followed the trial court's February 1, 2018 sentencing judgment entry with appellant raising three assignments of error for our review:[1]

I. Appellant's rights to due process and confrontation, under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution, were violated by the admission of the accuser's hearsay statements.

II. Appellant was denied effective assistance of counsel as guaranteed by the United States and Ohio Constitution.

III. The trial court's decision to allow the state to play the 911 call a second time, during the state's closing argument, was an abuse of discretion.

{¶ 10} Appellant's first assignment of error argues that his rights to due process and confrontation of witnesses were violated by the admission of his non-testifying accuser's statements through the 911 call and the jail calls, and the testimony of the responding officers.

---

[1] Assignments of Error nos. I and II are identical to appellant's counsel's initial brief filed on May 9, 2018. Following her withdraw, a supplemental brief was filed by successor counsel which added appellant's third assignment of error.

4.

{¶ 11} The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court of the United States held that "[w]here testimonial evidence is at issue, * * * the Sixth Amendment demands what the common law required: unavailability [of the declarant] and a prior opportunity for cross-examination." *Id.* at 68.

{¶ 12} The Supreme Court of Ohio, following *Crawford*, has held that "[f]or Confrontation Clause purposes, a testimonial statement includes one made 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, paragraph one of the syllabus. The *Stahl* court further held that "[i]n determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations." *Id.* at paragraph two of the syllabus.

**The 911 Call and Statements to Responding Officers**

{¶ 13} Appellant argues that the victim's statements to the 911 operator and to police were testimonial. Appellant contends that the statements are inadmissible hearsay based upon the Confrontation Clause requirements as set forth in *Crawford* and *Davis v.*

5.

*Washington* and *Hammon v. Indiana*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

{¶ 14} In *Davis*, the court held that a 911 telephone call made in response to an ongoing emergency was not a testimonial statement for Sixth Amendment purposes. *Id.* at 826-827. The statement was made as the events were actually happening and they enabled police assistance.

{¶ 15} In *Hammon v. Indiana*, the court first noted that it was a much easier task than *Davis*. In *Hammon*, the police reported to a "domestic disturbance." When police arrived, the victim was alone on the front porch and appeared somewhat frightened. *Id.* at 819. The parties were separated and the alleged victim was questioned about the events. At trial, the victim did not testify but the responding officer recounted the statements made by the victim. *Id.* at 819-820. The court found the victim's statements to be testimonial because the facts "objectively indicate[d] that there [was] no such ongoing emergency, and that the primary purpose of the interrogation [was] to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 822.

{¶ 16} During the 911 call at issue, the victim is very upset and appellant is still in the room. The victim is yelling at appellant to get away from her and she confronts appellant with what he allegedly had just done to her and the fact that that children witnessed the events. At least one child can be heard crying and appellant can be heard calling the victim profane names. After a few minutes appellant leaves the room. Soon thereafter, police arrive and the 911 call ends.

6.

{¶ 17} Upon review, we find that the 911 recording was admissible as it was made in response to an ongoing emergency. At the time of the call, appellant was still in the room and the victim and the children were clearly upset. The matter had not deescalated.

{¶ 18} Appellant also contends that the statements the victim made to the responding officers was testimonial where the emergency had passed and the primary purpose of the officers' testimony was to gather information of a past crime. Appellant argues that the facts in *Hammon*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224, are similar to the present facts.

{¶ 19} As set forth above, in *Hammon*, when the officers arrived on the scene there was no emergency in progress and the victim indicated that things were fine. *Id.* at 829-830. The court noted that when the victim was again questioned she was objectively asked "what happened"; the officer was investigating a possible crime. *Id.* at 830. Thus, the court concluded that questioning regarding past events is inherently testimonial because it does "precisely *what a witness* does on direct examination * * *." (Emphasis in original.) *Id.*

{¶ 20} This court addressed a similar issue in *Toledo v. Loggins*, 6th Dist. Lucas No. L-06-1355, 2007-Ohio-5887. In *Loggins*, the police arrived approximately two hours following a domestic violence call. Upon arrival, the alleged victim answered the door and appeared nervous and frightened but not hysterical. *Id.* at ¶ 3. The officer noticed some swelling around the victim's eye. Based on these facts, we concluded that because

7.

there was no emergency in progress at the time of the officers' arrival, any statements made were testimonial in nature and, thus, barred by the rules against hearsay. Id. at ¶ 25.

{¶ 21} In the present case, the officers arrived while the victim was in the hotel room and was still on the telephone with the 911 operator. The officers first encountered appellant in the hallway within a few feet of the door to the room occupied by the victim and their children. Appellant was visibly intoxicated.

{¶ 22} The officers described the victim as being "very upset," "crying," "shaking," "highly agitated," and "yelling." The parties' two minor children were also in the room and were crying and upset; their daughter had locked herself in the bathroom. The victim complained that appellant grabbed a hold of her by her hair and threw her to the ground. She complained of an injury to her neck.

{¶ 23} Upon review of these facts, we find that when the officers arrived on the scene there was an ongoing emergency and that the information obtained by the victim was to aid in the emergency and was not testimonial in nature. *See State v. Williams*, 6th Dist. Lucas No. L-08-1371, 2009-Ohio-6967.

**The Jail Calls**

{¶ 24} Appellant also challenges the admission of the recording of the two telephone calls he made to the victim from the Wood County Justice Center following his arrest. Specifically, appellant argues that the adoptive admission hearsay exception, R.C.

8.

801(D)(2), did not apply as appellant was not "free to disavow" the statements made by the victim.

> (D) Statements which are not hearsay.  A statement is not hearsay if:
>
> * * *
>
> (2) Admission by party-opponent.
>
> The statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity, or (b) *a statement of which the party has manifested an adoption or belief in its truth,* or (c) a statement by a person authorized by the party to make a statement concerning the subject, or (d) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy. (Emphasis added.)

"In order for an adoptive admission to be applicable, the declarant must have made the statement in the presence of the party against whom the statement is offered at trial.  In addition, the party must have heard and understood the statement, must have been free to disavow it, and must have either expressly acknowledged the truth of the statement or remained silent when a reasonable person would have denied its truthfulness." *State v. Comstock*, 11th Dist. Ashtabula No. 96-A-0058, 1997 Ohio App. LEXIS

3670, *13-14 (Aug. 15, 1997). The requirement that an adoptive admission

take place in the presence of the party does not exclude phone

conversations between the declarant and the party. *United States v. Woods*,

301 F.3d 556, 562 (7th Cir. 2002).

*State v. Long*, 2014-Ohio-4416, 19 N.E.3d 981, ¶ 21 (11th Dist.)

**{¶ 25}** Appellant argues that his failure to deny the accusations of the victim during the calls was not tantamount to an admission. During the calls, appellant repeatedly stated that he could not comment on the victim's statements because the conversation was being recorded. Thus, appellant asserts that finding otherwise is akin to allowing the jury to consider his silence as indicative of his guilt. We agree.

**{¶ 26}** The Second Appellate District recognized this argument in a case involving a recorded jail call. The court noted:

We recognize the possibility that an incarcerated individual might choose to remain silent in the face of incriminating accusations not because he agrees with them but because he does not wish to waive his Fifth Amendment right to remain silent by speaking while the government is listening. Where the record suggests that an incarcerated defendant's exercise of his right to remain silent is a motivating factor in his failure to refute incriminating allegations made by a private party, an adoptive admission may not be found. *See, e.g. Franklin v. Duncan* (N.D. Cal.1995), 884 F.Supp. 1435, 1445-1448, affirmed, (9th Cir.1995), 70 F.3d 75.

10.

*State v. Gibson*, 2d Dist. Greene No. 09-CA-05, 2010-Ohio-1121, ¶ 19.

{¶ 27} As set forth above, during the calls at issue, the victim insisted that appellant admit what he did or she would not aid him in getting out of jail. The victim then proceeded to provide details of the incident and commented that she had feared for her life. Appellant informed the victim that the call was being recorded and that he could not talk about the case. After much discussion, the victim finally understood that appellant did not wish to make any potentially incriminating statements while the call was being recorded.

{¶ 28} Based on the foregoing, we find that appellant's refusal to discuss the case was clearly motivated by his desire to exercise his right to remain silent and, thus, there was no adoptive admission. Although the court erred in allowing the admission of the jail calls, we need not reverse appellant's conviction if the error was harmless.

{¶ 29} Harmless error is defined under Crim.R. 52(A) as: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Under the harmless-error standard of review, "the government bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 36, quoting *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15. There is no distinction between constitutional and nonconstitutional errors under Crim.R. 52(A). *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5051, 24 N.E.3d 1153, ¶ 23. The court stressed that the rule simply asks whether the rights affected are "substantial." *Id.* at ¶ 24.

11.

{¶ 30} In *Morris*, Ohio Supreme Court provided a guide for appellate courts to aid in determining whether an error has affected the substantial rights of a defendant, thereby requiring a new trial. First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. *Id.* at ¶ 25, 27. Next, it must be determined whether the error was not harmless beyond a reasonable doubt. *Id.* at ¶ 28. Finally, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt. *Id.* at ¶ 29, 33.

{¶ 31} Upon review of the remaining admissible evidence at trial, we find that the erroneously admitted jail calls were not critical to the verdict in this case. The 911 call made by the victim and the testimony of the responding officers presented ample evidence of the crime alleged for the jury to find appellant guilty. Further, the evidence of prior domestic violence convictions elevated the offense to a felony. Appellant's first assignment of error is not well-taken.

{¶ 32} In appellant's second assignment of error, he argues that he received ineffective assistance of appellate counsel based on counsel's failure to object to the admission of the 911 call on the basis of a Confrontation Clause violation and the jail calls. The state counters that counsel's failure to object should be considered trial strategy and not ineffective assistance of counsel.

{¶ 33} Reviewing the trial transcript, we find that counsel objected to the playing of the 911 call prior to the testimony of the 911 operator. The basis of the objection was

12.

not specified. Counsel again objected just prior to the playing of the recording. In addition, counsel objected to the jail calls and the fact that counsel would be unable to cross-examine the other individual on the call. The court listened to the calls in camera; the objection was denied. Counsel again objected to the calls on the record. At the conclusion of the state's case, counsel objected to the admission of the 911 call and the jail calls into evidence. The objection was again denied.

{¶ 34} As to argument that counsel failed to specifically object to the 911 call on Confrontation Clause grounds we find that any error was harmless as the call, as set forth above, was clearly admissible. As to the testimony of the investigating officers, counsel did not object; however, based on our conclusion that the officers encountered an ongoing emergency, we find that any error was harmless. Accordingly, we find that appellant's second assignment of error is not well-taken.

{¶ 35} In appellant's third and final assignment of error he argues that the trial court erred by allowing the 911 call to be played during the state's closing argument. Prosecutors and defense attorneys are afforded wide latitude during closing arguments to address what the evidence has shown and what reasonable inferences may be drawn from that evidence. *State v. Black*, 181 Ohio App.3d 821, 2009-Ohio-1629, 911 N.E.2d 309, ¶ 33 (2d Dist.), citing *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990).

{¶ 36} As set forth above, the admission of the 911 call into evidence was not error. Thus, we find that the prosecutor was permitted to play it during closing argument. *State v. Morgan*, 1st Dist. Hamilton No. C-160495, 2017-Ohio-7489, ¶ 31, citing *State v.*

13.

*Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 197. Further, statements made by counsel during opening and closing arguments are not to be considered as evidence and the court instructed the jury as such. Appellant's third assignment of error is not well-taken.

{¶ 37} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Wood County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                               JUDGE
Christine E. Mayle, P.J.

Genea A. Zmuda, J.                _____
CONCUR.                                     JUDGE

                                 _____
                                               JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.